[Crim. No. 3774.   Second Dist., Div. One.   Sept. 5, 1944]

THE PEOPLE, Respondent, v. GEORGE W. TALBOTT, Appellant.

Goldman & Goldman and Harold J. Goldman for Appellant.

Robert W. Kenny, Attorney General; R. S. McLaughlin and T. G. Negrich, Deputies Attorney General; Fred N. Howser, District Attorney, and Robert G. Wheeler, Deputy District Attorney, for Appellant.

DORAN, J.—Accused by indictment alleging ten separate offenses of grand theft, appellant was adjudged guilty by a jury as to seven counts and not guilty of the offenses alleged in three counts. One John L. Allen, codefendant with appellant, was adjudged guilty on all counts.

A motion by defendant Talbott for a new trial was granted as to four of the counts and denied as to three. From the order denying said motion as to three counts, viz.: IV, V and VIII, and from the judgment defendant Talbott appeals.

The record reveals that appellant and Allen were associated originally in connection with the purchase by Allen of the stock of two corporations, the Kendon Petroleum Corporation, and the Wesco Petroleum Corporation, for the sum of $6,250 on a down payment of $2,500. The latter was a Delaware corporation owned by the Kendon Petroleum Corporation; it had no assets. All of the stock of these corporations was delivered to defendants. Allen became president and appellant vice president of the two corporations. A machine shop organized and operated by Allen thereafter was operated under the name of "Wesco Corporation." It was in connection with the promotion and operation of said machine shop that the alleged offenses of grand theft were committed by defendants. False pretenses formed the basis of the offenses. The details of the various transactions may be omitted; it is sufficient to note that a number of loans were obtained in various amounts from different individuals; bills of sale of various items of machinery and chattel mortgages were executed by defendants in connection with said loans; false representations as to the condition of the title to said machinery were made by defendants in connection with said loans and sales, the same machinery being used in different transactions. For example, the record reveals that, with regard to count four, the "Wesco Corporation" sold to one Lusher all of the equipment located at a certain address for $4,600, representing in the bill of sale that "the said Wesco Corporation does hereby represent that it

owns all of said equipment, machinery and supplies at said location, free from liens and encumbrances''; which representation was proven to be false. And, with regard to count five, defendants negotiated for and obtained from one Murphy $10,000 for certain machinery represented to be free and clear of all incumbrances, when in fact part of said machinery had been previously sold or incumbered. This transaction was in the presence of appellant and appellant prepared the bill of sale. The evidence justified the inference that appellant had full knowledge of the fraudulent character of the transaction. And finally, as to count eight, $5,000 was obtained from one Pfeiffer for the sale of certain machinery on the false representation that it was unencumbered. Appellant's connection with and guilty participation in this transaction likewise was established beyond question.

It is contended on appeal in substance that the evidence is insufficient to support the verdict; that certain evidence in two instances was improperly excluded and that the jury was improperly instructed.

In dealing with the first contention above mentioned appellant's argument mainly is a discourse in generalities and attacks the sufficiency of the evidence with the argument in substance that such a verdict, in the circumstances, was unwarranted as a matter of fact and that the necessary elements of the offense were not established as a matter of law. Appellant's counsel was not present at the trial, which in itself presents a natural handicap on appeal; however, the record is not neglected, for respondent analyzes the reporter's transcript of some 1,035 pages with particularity and effectively refutes appellant's argument in this regard. The effect of the evidence was a question of fact for the jury's consideration; as a matter of law, a review of the record reveals it to have been sufficient.

Appellant's second contention has to do with the trial court's rulings on the admissibility of certain evidence. Defendants sought to prove that in one instance the alleged victim's principal interest was in creating grounds for deferment by the draft board on the basis of some connection with an essential industry and that therefore the alleged misrepresentations were not relied upon. With regard to such evidence the trial court observed as follows: ''This is sort of a collateral issue. In my opinion, we are on a collateral issue.

However, it is proper that I permit the testimony to go before you for the very limited purpose of bearing upon the possible interest or bias, prejudice, motive, or feeling this witness has against the defendants, if he does have any such, and to that extent you are permitted to consider it, but for no other purpose whatsoever in the case.'' It is appellant's contention that ''said testimony should have been admitted on the question of the reliance Murphy placed upon any of the representations made to him either by Allen or appellant at the time he entered into the transaction with Allen.'' The word ''motive'' in the court's instruction is sufficiently comprehensive to include the purpose for which such evidence was offered, hence there can be no criticism of said limitation, as argued by appellant.

It is also urged that the exclusion of evidence tending to prove the value of certain property pledged was error. It was contended that notwithstanding proof of incumbrances as to part, the balance was of sufficient value to protect the loan. Such argument was then, and is now, beside the issue. If all of the property was fraudulently represented as unencumbered, the fact that part of it was actually free and clear and sufficiently valuable to protect the loan, is no defense. It should be noted that the State of California is the plaintiff in a criminal action wherein the defendant is accused of an offense against the state. The victim is merely a witness whose ultimate financial gain or loss, in the circumstances, is immaterial. Financial loss is not a necessary element of the crime.

With regard to the failure of the trial court to give any instruction on the law of conspiracy, appellant argues, referring to Count IV, ''He could only have been convicted on this count if the jury believed that a conspiracy had existed between appellant and Allen, and that the misrepresentations made to Lusher, if any were made, were part of a preconceived plan evolved by Allen and Talbott acting in concert.

''If this be the case, then it is respectfully urged that appellant was entitled as a matter of law to have the jury instructed on the law of conspiracy.''

With regard to Count V appellant continues, ''If the position is taken that the inducement was the false representations of Allen, these representations are not attributable to appellant, except upon the theory that Allen and appellant

had conspired to defraud Murphy. If this be the case, appellant was entitled to have the jury instructed on the law of conspiracy, . . .'' Referring to Count VIII appellant submits that, ''Once again we are confronted with the same legal situation that we had on the Lusher and Murphy counts; that is, that appellant could not have been convicted on Count VIII on the testimony of his action alone and we must assume that he was so convicted on said count because the jury believed that a conspiracy existed between Allen and appellant.'' And in connection with the foregoing contentions appellant concludes that, ''it is the position of appellant that once the trial court has allowed evidence that a conspiracy existed between co-defendants or between a defendant and another, or other persons, to go to the jury, it becomes the duty of the trial court to fully and fairly instruct the jury on the law applicable to conspiracy.'' Appellant's closing brief contains the following summary: ''As a result of the analysis of the evidence by both appellant and respondent as disclosed by the opening and reply briefs it is evident that this entire case, despite its many ramifications and involvements, has been narrowed to certain basic points upon which appellant and respondent are in complete antithesis. It is these points which the court is now called upon to determine. 1. Was appellant convicted as a principal or as a co-conspirator? 2. If he was convicted as a co-conspirator, was he entitled to have the jury instructed on the law of conspiracy? 3. Regardless of the determination in the foregoing questions did other errors committed by the trial court, if any were committed, preclude appellant from having a fair and impartial trial?''

With regard to the first of the three points which appellant submits the court is ''now called upon to consider,'' it is established by statute that parties to crimes are classified only as principals and accessories, (Pen. Code, § 30) ; and ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed.'' (Pen. Code, § 31.) A defendant in a criminal action therefore is convicted as a principal or accessory or not at all; and in this connection, the fact that principals may be

conspirators is immaterial. ■ Although the foregoing also disposes of appellant's "point 2," nevertheless, the earnestness with which and the extent to which appellant argues the proposition, together with an apparent misconception as to the law relating to conspiracy, which incidentally is not uncommon, entitles the subject to a more comprehensive consideration.

■ The word conspiracy is not defined in any of the codes. Neither conspiracy, as it was known to the common law, nor as it is known today, according to its usual acceptation, is a crime in California. Section 182 of the Penal Code provides that "if two or more persons conspire" to commit any of the acts specified in said section, they are punishable as therein provided, but only if and when "some act, beside such agreement, be done within this state to effect the object," of that which such persons conspire to do, as further provided by section 184, Penal Code. And section 183 of the Penal Code declares that "no conspiracies, other than those enumerated" in section 182, are punishable criminally. By the process of derivation, the crime created by these provisions is correctly described as criminal conspiracy, although it is not given that name by statutory enactment. Thus the criminal law recognizes conspiracy only in a limited sense.

Section 1850 of the Code of Civil Procedure provides that "Where . . . the declaration, act, or omission forms a part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act or omission is evidence, as part of the transaction." Section 1870, of the same code, provides in part, as follows: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: . . . 6. After proof of a conspiracy, the act or declaration of a conspirator against his co-conspirator, and relating to the conspiracy; 7. The act, declaration, or omission forming part of a transaction as explained in section eighteen hundred and fifty; . . ." And the Penal Code provides that, "The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code." (Pen. Code, § 1102.)

■ The provisions of section 1870 of the Code of Civil Procedure relate to rules of evidence and paragraph 6 of said

section, which deals with conspiracy, is a rule of evidence and nothing else. Here the word ''conspiracy'' is used without limitation and in its general acceptation. As so used, it includes a multitude of situations that are not crimes. The principle of evidence as therein expressed is not limited in its application to the trial of criminal actions but is utilized in the trial of civil actions as well. (See *Budd* v. *Morgan*, 187 Cal. 741 [203 P. 754]; *Del Campo* v. *Camarillo*, 154 Cal. 647 [98 P. 1049]; *Barkly* v. *Copeland*, 86 Cal. 483 [25 P. 1]; and *Zellerbach* v. *Allenberg*, 99 Cal. 57 [33 P. 786].)

Considerable misunderstanding with regard to the application of the rule as enunciated in paragraph 6 of section 1870 of the Code of Civil Procedure, together with a failure to recognize the importance of distinguishing rules of evidence from substantive criminal law, has resulted in no little confusion.

For example, in *People* v. *Sheffield*, 108 Cal.App. 721, at 724 [293 P. 72], appears the following: ''In this particular case these instructions on conspiracy should not have been given, because no conspiracy was charged nor was the case tried on the theory that a conspiracy existed between the defendants.'' Neither one of the instances referred to in the quoted language is ever the test as to when, and in what circumstances, instructions on the subject of conspiracy should be given. With regard to ''theory,'' the Supreme Court has declared as follows. ''This court, dealing with the very question here urged, said in *People* v. *Wright*, 167 Cal. 1 [138 P. 349], an abortion case, in part, as follows: 'It is not the ''theory'' which the prosecution advances, nor the ''theory'' which the defense adopts which governs the court in the giving or in the refusing to give instructions. Theories are of moment in a criminal case only as they are supported by substantial evidence. What the trial court is commanded by law to do is to state to the jury all matters of law necessary for their information in their deliberations. . . .' '' (*People* v. *Darrow*, 212 Cal. 167, at pages 184, 185 [298 P. 1]. ▆ And to refuse instructions on conspiracy because ''no conspiracy was charged'' definitely would be without legal sanction. As hereinbefore mentioned, the distinction between these two phases of conspiracy is important if confusion is to be avoided. ▆ Conspiracy merely contemplates an agreement to do something evil or unlawful, whereas the crime generally re-

ferred to as criminal conspiracy consists not only of the agreement to do a specified act but, in addition thereto, requires the commission of some act to effect the object of the agreement. Thus, conspiracy assumes two roles; and each relates to an entirely different branch and function of the law.

By virtue of the provisions of subdivision 6 of section 1870 of the Code of Civil Procedure evidence of acts and declarations of a conspirator against a co-conspirator, relating to the conspiracy, are received, when relevant, subject to the condition imposed by said subdivision, regardless of whether such evidence forms a part of the transaction, "which is itself the fact in dispute, or evidence of that fact." The statutory requirement of "proof" of the conspiracy before such evidence may be considered, however, introduces a collateral issue, for "proof . . . is the establishment of a fact by evidence," (Code Civ. Proc., § 1824). Thus the fact of the conspiracy must be proved before the evidence of said acts or declarations may be considered. The issue, however, need be proved only to the extent of establishing prima facie evidence of the fact. It need not be established by a preponderance of the evidence in a civil action nor beyond a reasonable doubt in a criminal action; the latter doctrine applies only to the issue of guilt. Any evidence received by virtue of this rule necessarily is received conditionally, for in the final analysis, the jury must first pass judgment on the question as to whether the asserted conspiracy has been proved. If proved to the satisfaction of the jury, the evidence of the acts or declarations of a conspirator, in such circumstances, may be considered. Obviously, such a situation incident to the trial of an action demands appropriate instructions with reference to the evidence so received, and with reference to the jury's duty with regard thereto. As declared by the Supreme Court in *People* v. *Geiger,* 49 Cal. 643, at 649, "The question of conspiracy was then submitted to the jury, with instruction to disregard the declarations of Alexander, unless the conspiracy was satisfactorily proved. This was the proper practice." On the other hand, unless the rule of evidence here considered is invoked, such instructions are out of place. As pointed out in *People* v. *Savinovich,* 59 Cal.App. 240, at 243, et seq. [210 P. 526], "While it is true that the trial judge, under the provisions of sections 1093 and 1127 of the Penal

Code, should charge the jury on points pertinent to the issues when requested by either party, and state to them all matters of law for their information, nevertheless such charge should be restricted to such matters of law applicable to questions which are fairly within the issues tried. When the charge, even though a correct statement of abstract legal principles, is extended beyond such limitations so as to cover an assumed issue which finds no support in the evidence, it constitutes error which, if prejudicial, will warrant a reversal of a judgment of conviction.''

In a civil action, if the cause of action is based on an alleged conspiracy, an instruction in explanation thereof would not be inappropriate. And in a criminal action, wherein the information or indictment alleges that defendants did, on or about a certain date, conspire, etc., as provided in section 182 of the Penal Code, then and in that event, an instruction defining the word ''conspire'' would be necessary in connection with a definition of the offense alleged. But, in the absence of either one of the foregoing conditions, no instruction on the subject of conspiracy is ever necessary, whether the action be civil or criminal, unless the rule of evidence pertaining to the acts or declarations of a conspirator is invoked. When the last mentioned rule or principle is resorted to, instructions are imperative, for, it is only by such means that the issue of fact, introduced by resort to the rule, can be submitted to the jury. Assuming, therefore, that evidence, otherwise inadmissible, is received in such circumstances, it is at once evident that, in the absence of appropriate instructions, such evidence would remain in the record in violation of the hearsay rule.

Juries are frequently instructed that when a conspiracy is established, and a person is shown to be a party to the conspiracy, then he is bound by the acts and declarations of his co-conspirators, done and made in pursuance and furtherance of the conspiracy, precisely as if he himself had done or made such acts or declarations; for the reason that, in law, each conspirator is deemed the agent of each and all co-conspirators for all the purposes of the common design. Although such instructions embody a well established principle of law and are indispensable in some jurisdictions, nevertheless, there is no statutory authority or necessity for such practice. ''All persons concerned in the commission of a crime . . . are prin-

cipals'' and, when two or more are ''concerned,'' they are bound by the acts and declarations of each other, when such acts and declarations are part of the ''transaction'' in which they are engaged, because they are ''principals'' and not because they are conspirators. It may be conceded that the principle is the same and, in effect, there is no difference in the result, but such concession only tends to confirm the dispensability of instructions on conspiracy as herein considered. The liability of a defendant for a criminal act is fixed by the provisions of section 31 of the Penal Code defining principals; and no instruction on the subject of conspiracy can add anything to that liability. Moreover, conspiracy comprehends nothing that is not included in the definition of ''who are principals.''  ▮▮  Liability attaches to anyone ''concerned,'' however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal.

▮▮  It may be true that in many trials involving two or more defendants a conspiracy is shown either directly or inferentially, but it does not follow that in all of such cases instructions on the principles of conspiracy are necessary, for all of the evidence may have been admitted by virtue of the general rules of evidence without resort to the authority provided by paragraph 6 of section 1870 of the Code of Civil Procedure. In such situations appropriate instructions on who are principals, the meaning of the terms aid, abet, aider and abettor, etc., together with instructions on matters of law which the court thinks necessary for the jury's information (Code Civ. Proc., § 608), and on ''any points of law pertinent to the issue, if requested by either party'' (Pen. Code, subd. 6, § 1093), meet all statutory requirements.

In the within action the jury was fully instructed on all of the foregoing last mentioned subjects.  ▮▮  What is a ''pertinent issue'' is a question necessarily addressed to the judgment and discretion of the trial court. The record reveals that appellant's request for instructions on the principles of conspiracy was withdrawn.  ▮▮  Moreover, the trial court chose the alternative of advising the jury as follows: ''Ladies and gentlemen, any conversation purportedly had with one defendant but not in the presence of the other defendant, can be received by you as evidence affecting, if it does affect, the defendant only who is present and not the

absent defendant. That instruction goes now at this moment and throughout the trial." The advice, as given, excluded evidence that, in the light of the record, could properly have been considered. ██ As to what constitutes hearsay, the presence or absence of a party is not always the test. ██ However, the ruling was in appellant's favor, hence no prejudice could have resulted therefrom.

It follows from the foregoing that, in order properly to present the argument on appeal that any prejudice resulted from the failure of the court to instruct the jury on the principles of conspiracy, it must be shown that certain evidence was received, otherwise inadmissible, that was prejudicial by reason of the failure of the court to submit the related issue of conspiracy; and such evidence must necessarily be pointed out in the record. Appellant herein followed no such procedure but relied on generalities, contending in substance, as hereinbefore noted, that defendant could only have been convicted "if the jury believed that a conspiracy had existed between appellant and Allen" and that the failure of the court to instruct the jury accordingly was prejudicial. There is no support in the law for the process argued by appellant; its indorsement would be contrary to long established rules of procedure and evidence.

Referring to appellant's point "3," viz., "Regardless of the determination in the foregoing questions did other errors committed by the trial court, if any were committed, preclude appellant from having a fair and impartial trial?", such alleged errors have been hereinbefore referred to and disposed of. The record reveals no prejudicial errors.

For the foregoing reasons the judgment and the order are and each of them is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied September 20, 1944, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1944. Shenk, J., Carter, J., and Schauer, J., voted for a hearing.