[Crim. No. 6376.   Second Dist., Div. Two.   Mar. 30, 1959.]

THE PEOPLE, Respondent, v. THOMAS BRUCE
CATLIN, Appellant.

Gerald J. Levie for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant, a police officer of the city of Los Angeles at the time of the offenses charged, was convicted in a jury trial of burglary in the second degree, petit theft, and attempted extortion. This is an appeal from the judgment of conviction and the order denying a motion for new trial. Appellant contends that the trial court committed prejudicial error in (1) admitting over objection incriminating evidence of the acts and statements of other parties to the crimes charged which occurred without the presence of the appellant; (2) denying appellant's motion to dismiss at the close of the People's case; and (3) in refusing several requested instructions respecting accomplice testimony. Reviewing the evidence according to the familiar rule, the case may be summarized as follows:

In January, 1957, appellant was a police officer of the city of Los Angeles, assigned to the Analytical Section of Central Division. Appellant had been assigned to the Central Vice Section of the department for over three years preceding September, 1956, and while attached to the vice section had become acquainted with one Morris Goodman, whom appellant had investigated with regard to bookmaking activities.

About the middle of January, 1957, appellant received a telephone call from Goodman regarding the possibility of making an arrest for the production of lewd films. Appellant then telephoned Denver Ore Eggleston, his partner when assigned to the vice section, and codefendant in the trial below, to inquire if Eggleston were interested in participating

in the arrest. Receiving an affirmative reply, appellant arranged a meeting with Eggleston and Goodman in a bar on Sunday, January 20, 1957, at which time Goodman was introduced to Eggleston, and Eggleston was informed that the other two planned a "shakedown" which Eggleston understood to mean that extortion or blackmail would be attempted. The three men then left the bar and met again at a bowling alley on the corner of La Cienega and Santa Monica Boulevards, where Goodman made some telephone calls and informed the others that no pictures were being taken that day. The three men agreed to meet at the bowling alley the following Sunday, appellant's day off.

On January 27, 1957, the following Sunday, the three men met at the bowling alley, and at about 5 p.m. proceeded on foot a short distance to the residence of Maurice Bailey. Bailey had an upstairs apartment over a store on La Cienega Boulevard which was his place of business. The rear door was shut but unlocked, and appellant opened the door and entered the apartment followed immediately by Goodman and Eggleston. There were five people present in the apartment: Bailey, Antonio Lozzi, Lloyd Crane and a couple identified as Everett and Marilyn Jackson. When the officers and Goodman entered the apartment, they found Marilyn lying nude on the bed. There was a camera set up on a tripod pointed toward the bed and there were two stands of floodlights in the bedroom. Everett, also nude, was in the bedroom or bathroom. The three men were in plain clothes, but appellant identified himself as a police officer by displaying a patrolman's badge. Both Eggleston and appellant represented Goodman as the police officer in charge of the detail. They addressed him as "Sarge" or "Sergeant" and acquiesced in Goodman's statement that it was a narcotics investigation and that he was in charge of the detail. Goodman separated Bailey from Lozzi and Crane and ordered appellant and Eggleston to keep the others separated. Appellant and Eggleston at Goodman's direction proceeded to conduct a search of the premises. Goodman then took Bailey into the bedroom where Marilyn was lying on the bed, nude, facing the camera. Eggleston was standing by the camera, and Goodman ordered Bailey to sit on the bed beside the nude woman and face the camera, which Eggleston then operated. Bailey was then taken by Goodman into the kitchen, and from there downstairs to Bailey's place of business. During their conversation, Goodman indicated that Bailey faced an arrest for which

$50,000 bail would be required, but that for the sum of $5,000 he would not involve Bailey in criminal proceedings. Goodman particularly warned Bailey not to reveal the transaction to "the man upstairs" and took from Bailey five checks of one thousand dollars each, payable to cash. Goodman indicated that he would give Bailey until the following afternoon to raise the five thousand dollars in cash when he would then return the checks to Bailey.

Eggleston, who had remained in the bedroom with Marilyn, also photographed Crane and Lozzi with the nude woman on the bed. During his search of the premises, Eggleston uncovered a number of photographic slides depicting a nude man with his private parts exposed. No narcotics were found by Eggleston. Throughout these proceedings, appellant remained in the living room and hallway. He conducted a search of the living room, and kept Crane and Lozzi under surveillance; however, he took no direct part in the solicitation of funds or the operation of the movie camera.

After Goodman obtained the checks from Bailey, they returned to the living room where Goodman continued to act as the officer in charge of the detail. As the group was preparing to depart, Goodman, in appellant's presence, said to Bailey "not to forget what he had said downstairs" and "not to forget . . . about my getting the money to retrieve the checks." Goodman then indicated that the detail should leave. Before the group left, Eggleston indicated that Bailey's camera, lens and five to six rolls of motion picture color film were evidence in the case and took them with him when they left. The camera and film were never returned to Bailey.

Appellant, Eggleston and Goodman left the apartment with the Jacksons, the couple who were to pose for the lewd films. The Jacksons were not arrested but parted from appellant and his companions within a block of Bailey's residence. The following day, Bailey related the event to officers of the Los Angeles Police Department, and that afternoon, January 28, Goodman was arrested. The following July, in a separate trial, Goodman was convicted of attempted extortion. Appellant learned that Goodman had been arrested by the Bunco Detail on January 28; however, he submitted no report of the events of January 27, nor did he disclose to his superiors his knowledge of the events or his participation in the activities of that afternoon.

Goodman was not called as a witness by the People or either defendant. Eggleston, who was tried as a codefendant

with appellant, testified in his own behalf, and was cross-examined by appellant's counsel and by the deputy district attorney. He admitted participating in the attempted extortion, and testified that appellant was also a party to the scheme. Eggleston, however, denied that he had taken the camera equipment, which was the basis of the charge of grand theft. He testified that he did not seek to be acquitted of the charge of attempted extortion, but that he was innocent of the charge of grand theft.

Testifying in his own behalf, appellant denied participating in the plan to extort money from Bailey, and in his brief appellant argues that he was the innocent dupe of Goodman and Eggleston. Appellant testified that he did not disclose his participation in the events of January 27 because he ". . . realized it was somewhat out of the scope of my employment at that time" and that he "didn't want to be involved in any way with anything that had happened out there that day."

Initially, appellant contends the trial court committed prejudicial error in admitting evidence of the acts and declarations of Goodman and Eggleston which tended to incriminate appellant in the offenses charged. It is appellant's theory, advanced throughout the trial and on his appeal, that there was insufficient evidence, apart from the declarations of Goodman and Eggleston, to permit the inference that appellant was a party to a conspiracy.

Section 1870 of the Code of Civil Procedure, provides: ". . . evidence may be given upon a trial of the following facts: . . . 6. After proof of a conspiracy, the act or declaration of a conspirator against his co-conspirator, and relating to the conspiracy;" The foundational requirement is satisfied by prima facie proof of the conspiracy. As stated in *People* v. *Talbott*, 65 Cal.App.2d 654, 663 [151 P.2d 317] : ". . . the fact of the conspiracy must be proved before the evidence of said acts or declarations may be considered. The issue, however, need be proved only to the extent of establishing prima facie evidence of the fact. It need not be established by a preponderance of the evidence in a civil action nor beyond a reasonable doubt in the criminal action; the latter doctrine applies only to the issue of guilt. Any evidence received by virtue of this rule necessarily is received conditionally, for in the final analysis, the jury must first pass judgment on the question as to whether the asserted conspiracy has been proved. If proved to the satisfaction

of the jury, the evidence of the acts or declarations of a conspirator, in such circumstances may be considered.'' (See also *People* v. *Curtis,* 106 Cal.App.2d 321, 326-327 [235 P.2d 51].)

In the instant case the testimony of the victim of the alleged shakedown, Bailey, permits the inference that appellant was a party to the extortion scheme. The investigation which Bailey described was so patently irregular as to raise the natural inference that it was conducted for a criminal purpose. Appellant's knowing participation could reasonably be inferred. First of all, appellant participated fully in the basic deception by which Goodman, a civilian and one-time criminal suspect was cloaked with the mantle of police authority. There was testimony that appellant and Eggleston referred to Goodman as ''Sarge'' and followed his directions so as to indicate that Goodman was the police officer in charge of the detail. Moreover, by following Goodman's directions, appellant facilitated Goodman's private conversations with Bailey in which Goodman demanded money. Similarly, appellant failed to object to Eggleston's procedure in photographing the male occupants of the apartment in the bedroom in the company of the nude woman. Finally, there was testimony that in the presence of appellant, Goodman reminded Bailey of the money which Goodman was to collect from the victim. These obvious departures from proper police procedure permit the inference that appellant was a party to the extortion plot more clearly revealed by the acts and declarations of Goodman and Eggleston.

Since there was at least prima facie evidence of the existence of a conspiracy, the trial court did not err in admitting evidence of the acts and declarations of Goodman and Eggleston. (*People* v. *Steccone,* 36 Cal.2d 234, 238 [223 P.2d 17]; *People* v. *Talbott, supra,* 65 Cal.App.2d 654, 663; *cf. People* v. *Busby,* 40 Cal.App.2d 193, 199 [104 P.2d 531].)

Appellant's contention that the trial court erred in denying his motion to dismiss at the close of the People's case is without merit. In the first place, no such motion is available to the defense. (*People* v. *Clark,* 61 Cal.App. 46, 47 [214 P. 248]; *People* v. *Fouts,* 61 Cal.App. 242, 245-246 [214 P. 657]; *People* v. *Kimball,* 23 Cal.App.2d 32, 34 [72 P.2d 157]; *cf. People* v. *Faber,* 29 Cal.App.2d Supp. 751, 758-759 [77 P.2d 921].) In the second place, as indicated by our statement of the case, the evidence in the record when

the motion was made was more than adequate to establish a prima facie case against appellant.

Finally, appellant contends the trial court committed reversible error in refusing certain requested instructions relating to accomplice testimony. Appellant requested CALJIC Number 821, relating to the necessity of corroboration for accomplice testimony, CALJIC Number 822, stating what constitutes sufficient corroboration, CALJIC Number 823, stating that corroboration cannot be found in the testimony of an accomplice, former CALJIC Number 831, indicating that the fact that a statement has been corroborated does not mean that it is true, and CALJIC Number 829, stating that the testimony of an accomplice should be viewed with distrust, all of which the trial court refused.

Eggleston, a codefendant, testified in his own behalf in a manner which clearly incriminated appellant. Although Eggleston denied taking Bailey's camera, lens and film, he admitted that the object of their activities on January 27th was a ''shakedown.'' Eggleston's testimony further incriminated appellant in that Eggleton testified to the effect that from the outset extortion was the express purpose of all three men. Although Eggleston never withdrew his plea of not guilty, he testified that he did not seek to be acquitted of the charge of extortion.

In this situation, it was error for the trial court to refuse the requested instructions. ■■ As stated in *People* v. *Warren*, 16 Cal.2d 103, 118-119 [104 P.2d 1024] : ''. . . whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice, it is the duty of the trial court to instruct the jury upon the law as set forth in section 1111 of the Penal Code; that the failure of the trial court to so instruct the jury under such circumstances, with or without a specific request for such instructions, constitutes error; but that in the event of such failure in any case, the entire record must be considered in determining whether such error constituted prejudicial error requiring a reversal of the judgment of conviction.''

■ There are certain exceptions to the above quoted rule applicable where testimony is given by a codefendant. Thus, it is not error to refuse accomplice instructions where a codefendant denies participating in the crime and does not incriminate the other defendant (*People* v. *Thompson*, 133 Cal. App.2d 4, 10-11 [284 P.2d 39] ; *People* v. *Dupree*, 156 Cal.

App.2d 60, 70-71 [319 P.2d 39]) or where the codefendant denies participating in the crime and the clear import of his denial is to incriminate the other defendant. (*People* v. *Arends,* 155 Cal.App.2d 496, 512-513 [318 P.2d 532].) The theory of these exceptions is that it would subject the codefendant to unfair prejudice in the eyes of the jury to give even a limited instruction on accomplice testimony. But where, as here, codefendant has so testified as in practical effect to plead guilty as well as to incriminate the other defendant, we think the general rule should apply and that the accomplice instructions should be given. (*Cf. People* v. *Warren, supra,* 16 Cal.2d 103, 118-119.)

However, assuming it was error to refuse the requested instructions, as indicated in *People* v. *Warren, supra,* we must examine the entire record to determine ". . . whether such error constituted prejudicial error requiring a reversal of the judgment of conviction." (*People* v. *Warren, supra,* 16 Cal.2d 103, 119.)  And as stated in *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], ". . . a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

 In the case at bar it is inconceivable that the jury might reasonably have reached a different result had the requested instruction been given. Viewed as a whole, the record discloses a situation in which appellant, a police officer, received information concerning the production of lewd films from a civilian informant. Appellant was no longer assigned to the vice squad, but he personally contacted his former partner, Eggleston, and arranged a meeting between Eggleston and Goodman in a bar on a Sunday afternoon. When the three men entered the victim's apartment, appellant fully participated in the deception by which Goodman was represented as the police officer in charge of the detail, and his participation facilitated Goodman's solicitation of money from the victim. Appellant left with his companions without making an arrest or reporting his activities to his superiors. Moreover, appellant's failure to disclose his participation in the investigation *after* he learned of Goodman's arrest is highly significant. In the light of these facts, and applying the test enunciated in *People* v. *Watson, supra,* we

are of the opinion that it is not reasonably probable that a result more favorable to defendant would have been reached had the requested instructions been given.

The judgment and order denying motion for new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied April 23, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1959.