[Crim. No. 3265. Third Dist. Nov. 22, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. SAMUEL KENNETH CANCIMILLA, Defendant and Appellant.

Frank Sterle, Gilbert Jones and Skow, Sterle & Jones for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel Haws, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, J.—During the nights of November 1 and 2, 1960, Butte County Sheriff's deputies, as a part of a raid upon, and roundup and arrest of, narcotic addicts and sellers, went to the home of appellant and demanded entry. Appellant, after some preliminaries, opened the front door, admitting the officers. Appellant was put under arrest and a search was made of the premises, both without a warrant. During this search part of a marijuana plant, marijuana seeds and

two so-called "crutches" (devices said to prolong smoking of a marijuana cigarette) were found. Appellant was charged with and convicted of possession of marijuana (Health & Saf. Code, § 11530), and of a conspiracy with one Jose Guerra to transport or sell marijuana. (Pen. Code, § 182, subd. 1; Health & Saf. Code, § 11531.)

Appellant's main contentions on appeal (others will be discussed below) are, (1) illegal search and seizure of the marijuana without a warrant and without probable cause, and (2) introduction in evidence of appellant's own extra-judicial admissions and of the acts and declarations of Guerra, the coconspirator, without prior proof of the corpus delicti, namely, the fact of the conspiracy.

The prosecution's proof, in its chronological order, principally through narcotic agent Henry Lopez, showed: that as part of an extensive undercover investigation of Butte County narcotic activities Lopez solicited a suspect, Jose Guerra, on October 8, 1960, at a bowling alley in the town of Paradise, posed as a marijuana user and successfully induced Guerra to agree to obtain 15 marijuana cigarettes for him from an unnamed supplier mentioned by Guerra as his source. Lopez paid Guerra $10.

The next day, October 9th, Guerra informed Lopez he had paid "the man" (narcotic trade jargon for "supplier") who would deliver the cigarettes the following day. Lopez' efforts to obtain delivery consumed most of October 10th. Informed by Guerra in the morning that he had not yet been contacted by "the man," Lopez was told to drive around. Returning, Lopez saw Guerra engaged in conversation beside a parked garbage truck, with a man whom he identified as appellant. He then watched appellant drive away in the truck. Lopez met Guerra again and was informed Guerra had just contacted "the man" who had told him he could not supply the marijuana until later. Guerra reassured Lopez that "the man" would not "burn him" (fail to make delivery), that he was a garbage truck driver whom Guerra saw every day. Later that evening, after Guerra and Lopez had driven around town looking for "the man" Guerra went alone into the Paradise bowling alley, returned stating the man had told him "the stuff" had been delivered at Guerra's house. There it was found and 15 marijuana cigarettes were then delivered to Lopez.

Lopez next saw Guerra as a hospital patient, learned he had been in an automobile accident and that he had been arrested

for possession of marijuana found in his clothing. Guerra stated he would deny guilt, claiming someone had knocked him unconscious and placed the marijuana on his person. Lopez, having offered to raise bail money for Guerra by selling marijuana if Guerra would put him in touch with his supplier, was informed the supplier was known to him only as "Kenny," which is appellant's middle name, and that he drove his garbage truck to collect garbage from the Catholic Church at Paradise every Monday at 11 a. m.

Some days later (October 20th), Lopez was able to establish contact with appellant on his truck and asked him, "Are you Kenny?" He received an affirmative reply and after Lopez mentioned Guerra, appellant asked, "Are you Henry?" From the conversation, Lopez gleaned from appellant that he was reluctant to deal with Guerra, who he said had been dealing with youngsters, which had brought the "heat" on. When Guerra's proposed defense was mentioned, appellant stated, "That is a good defense, I once had a similar situation." Appellant told Lopez he would discuss the matter with his partner, but the next day informed him his partner had been unable to obtain marijuana in sufficient supply to raise bail for Guerra. He stated that the last "stuff" he had, he had given to Guerra and he didn't have any more. Appellant suggested Joe Arriza (one of the people picked up on the November 1st raid) as a source of supply.

The information thus received by Lopez from these contacts with Guerra and with appellant was furnished by Lopez to the arresting officers.

 Were the resultant arrest and search and seizure illegal?

No. A reasonable search without a search warrant may be made of a person and premises as an incident to a lawful arrest. (*People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535].)

Penal Code section 836 provides in part:

"A peace officer . . . may without a warrant, arrest a person:

. . . . . . . . . . . . . . .

"2. When a person arrested has committed a felony, although not in his presence.

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

■ It is stated in *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] :

"Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (See the most recent reassertion and discussion of this rule by the California Supreme Court (Gibson, C.J.) in *People* v. *Torres* (Nov. 16, 1961) 56 Cal.2d 864 [17 Cal.Rptr. 495, 366 P.2d 823].)

■ Appellant cites *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689], as supporting his contention that information received by the arresting officers from Lopez, being hearsay, was insufficient. That case does not furnish such support. There the arresting officer based his right to make the arrest upon having seen an unnamed and unidentified informer talking to his superior officer (since deceased) who had then recounted the informer's story and instructed his subordinate to make the arrest. It was held that "if a superior police officer has reliable information which would justify him in making an arrest himself, he can delegate the making of the arrest to a subordinate, and justify the arrest by the subordinate by his (the superior's) knowledge," but that the prosecution must be able to introduce sworn testimony establishing that "reasonable grounds for arrest" had not been manufactured by the police department, thus obviating the possibility of the creation of a "phantom informer." [P. 523.]

No such circumstance sullies this arrest. The informer here was identified and was well known to appellant. A material part of the justifying information had come from appellant himself. The "superior officer" was the prosecution's principal witness. (See *People* v. *Fischer, supra.*)

■ Appellant's next contention is that the conviction for conspiracy must fall because admissions of the defendant and statements of the alleged coconspirator implicating appellant were admitted in evidence prior to proof of the corpus delicti of the crime of conspiracy.

[■ Introduction into evidence of an admission or confession of a defendant on the one hand and introduction into evidence of acts or declarations of a conspirator against his coconspirator on the other rest upon different rules of law.

■ The rule relative to admissions (and confessions) is that there can be no conviction based thereon without proof of the corpus delicti; in other words, even though a party

confesses to something it must be shown that that something has actually happened, and by a criminal agency.

"Corpus delicti means the body or substance of the crime, and may be defined in its primary sense as the fact that a crime actually has been committed. As applied to a particular offense, it means the actual commission by some one of the particular crime charged." (23 C.J.S. § 916(1), pp. 623-624.)

". . . As a general rule the connection of accused with the crime, or the identity of its perpetrator, is not an element of the corpus delicti, . . . ."(23 C.J.S. § 916(1), pp. 624-625.)

Although it has been said that "Identity of the perpetrator is never a part of the corpus delicti" (Fricke, California Criminal Law (8th ed.) p. 23), no case of conspiracy has been found so holding. ▮ The gist of the crime of conspiracy is *a corrupt agreement between two or more persons* to commit an offense prohibited by statute accompanied by some overt act. (Pen. Code, §§ 182, 184; *People* v. *Sica,* 112 Cal.App.2d 574, 580, 581 [247 P.2d 72].) ▮ And in several California conspiracy appeals where the rule of corpus delicti has been discussed it was at least implicit in the decision that identification of the defendant as a party to the agreement, at least by description, is a part of proof of the corpus delicti. (*People* v. *Sica, supra,* p. 584; *People* v. *Steccone,* 36 Cal.2d 234, 239 [223 P.2d 17]; *People* v. *Curtis,* 106 Cal. App.2d 321, 327 [235 P.2d 51]; *People* v. *Catlin,* 169 Cal. App.2d 247, 253 [337 P.2d 113].)

Code of Civil Procedure section 1870, subdivision 6, cited by appellant, states:

"In conformity with the preceding provisions, evidence may be given upon a trial of the following facts:

· · · · · · · · · · · · ·

"6. After proof of a conspiracy, the act or declaration of a conspirator against his co-conspirator, and relating to the conspiracy; . . . ."

This section of the Code of Civil Procedure, part 4, "Evidence," title 1, "General Principles," is not a rule of substantive criminal law. It is a rule of evidence. (*People* v. *Talbott,* 65 Cal.App.2d 654, 661-662 [151 P.2d 317].) ▮ The section has also been construed as a direction regarding the order of proof in which the trial court is vested with discretion to allow chronological presentation of the prosecution's evidence, mingling acts and declarations of conspirators with other evidence where facts from which the conspiracy can be inferred are so enmeshed with other facts going to constitute

the crime and so interwoven with conversations that it is difficult to separate them. (*People* v. *Sica, supra*; *People* v. *Ferlin,* 203 Cal. 587, 599 [265 P. 230]; *People* v. *Griffin,* 98 Cal.App. 2d 1, 52-53 [219 P.2d 519]; 4 Wigmore, Evidence (3d ed.) § 1079, p. 131; 2 Wharton, Criminal Evidence (11th ed.) § 727, pp. 1221-1222.)

The trial court permitted the prosecution to present its proof here chronologically without attempting to separate the acts and declarations of the coconspirator, Guerra, from the other evidence. It is difficult to see how it could have presented a case which would have made sense to the jury otherwise.

In proving the corpus delicti of the crime of conspiracy, as in the proof of other crimes, only prima facie evidence is required. It need not be proved beyond a reasonable doubt and proof may be by circumstantial evidence. (*People* v. *Talbott, supra*; *People* v. *Sica, supra*; *People* v. *Steccone, supra*.)

Finally, before discussing the facts applicable, it is to be noted that no statutory or other proscription exists against introducing evidence of the behavior of a coconspirator generally* or against offering evidence of the behavior of defendant (as distinct from his admissions and confessions), both as a part of the corpus delicti.

An examination of the record establishes that proof both of the corpus delicti under the general rule and of the "fact of the conspiracy" under Code of Civil Procedure section 1870, paragraph 6, were sufficiently established here without recourse either to appellant's admissions or to "the act or declaration of a conspirator against his co-conspirator."

The narcotic agents were in Butte County investigating the operations of a ring or conspiracy of persons engaged in the distribution and sale of marijuana. One of them, Officer Lopez, by convincing a suspect, Guerra, that Lopez was a prospective purchaser and potential "pusher" was able to cause Guerra to reveal himself as a member of the ring. Lopez, having obtained this information, and having paid the purchase price for marijuana cigarettes, agreed to be delivered, observed appellant talking with Guerra at exactly the time and place when and where delivery was expected. Thereafter the purchase was completed under facts at least circumstantial

*It being acts "of a conspirator *against his* co-conspirator . . ." (italics added) only which must await other proof of the "fact of the conspiracy."

that appellant had been the supplier. Later, the behavior of appellant in Lopez' contacts with him (as distinct from, and in addition to, appellant's admissions) evidenced a knowledge of, and his connection with, the marijuana trafficking in Butte County. And, finally, the search of appellant's premises which disclosed a marijuana plant, seed and paraphernalia for the smoking of marijuana was further circumstantial evidence connecting his activities with the conspiracy. (See *People* v. *Van Eyk,* 56 Cal.2d 471, 478 [15 Cal.Rptr. 150, 364 P.2d 326]; *People* v. *Catlin,* 169 Cal.App.2d 247 [337 P.2d 113].)

These facts were not conclusive. They did not need to be. They were made conclusive when added to the acts and declarations of Guerra against his coconspirator and to the admissions of appellant himself.

 Appellant next argues it was prejudicial error for the trial court in ruling upon (and ultimately sustaining) appellant's objection to proffered rebuttal testimony by Officer Lopez to inquire generally, and in the jury's presence, whether such testimony "relates to admissions or statements made by the defendant." The contention is untenable. The court's comment was without particularization. The jury was instructed to "disregard comments of counsel and of the Court and of our entire discussion." There was no error in the court's inquiry. Jurors should be treated as adults possessed of some common sense. It is not necessary to insulate them from absolutely all verbal exchanges between counsel and the court. If recesses and retreats to chambers were to be required for every such trivial incident as that under discussion, trial time, already too protracted procedurally, would become interminable.

 Appellant also urges as error the court's refusal to instruct the jury to the effect that where the testimony of an accomplice is relied upon for conviction it must be corroborated by other testimony. The instructions were properly refused. The prosecution here did not offer or rely upon the testimony of the coconspirator, Guerra. He was produced as a defense witness. (*People* v. *Martin,* 12 Cal.2d 466 [85 P.2d 880].)

 Appellant complains of the admission in evidence over objection of the testimony of Officer Lopez relating appellant's alleged statement (when informed of Guerra's proposed defense to the charge of possession) "That is a good

252

defense, I once had a similar situation.'' The general rule excludes evidence of other offenses of a defendant unless it is relevant for some purpose other than to show disposition to commit crime. (Witkin, California Evidence, § 135, p. 158, and cases there cited.) Of course, the evidence admitted here did infer the commission by appellant of a previous offense, but it was offered for another purpose and it was admissible for that purpose. It showed appellant's familiarity with narcotics and traffic in narcotics generally, and it tended to prove the conspiracy by describing appellant's willingness to cooperate with the coconspirator's defense. (*People* v. *Hancock,* 156 Cal.App.2d 305, 312 [319 P.2d 731]; *People* v. *Pettyjohn,* 172 Cal.App.2d 188, 198 [342 P.2d 416].)

Appellant's next assignment of error relates to Count II of the information charging conspiracy. As originally filed it was defective in failing to identify the coconspirator and in failing to specify the overt act. It was corrected in both respects with court permission after the evidence was in. Section 1009 of the Penal Code permits this ''at any state of the proceedings.'' Applied to the circumstances of this case, neither the code section itself nor the granting of the motion to amend impaired any substantial right of appellant nor denied him due process otherwise. No new offense is permitted to be charged by the section and none was charged by the amendment. Constitutionality of the section has been established. (*People* v. *Tallman,* 27 Cal.2d 209 [163 P.2d 857]; *People* v. *Joseph,* 21 Cal.App.2d 336 [69 P.2d 465]; *People* v. *Roth,* 137 Cal.App. 592 [31 P.2d 813].) Both the identity of the coconspirator and the specific overt act charged had been disclosed by the evidence at the preliminary hearing and by the prosecution's first witness at the trial. No surprise is claimed, nor very well could be.

The next contentions of appellant have to do with claimed curtailment of argument.

During the course of argument of appellant's counsel, he stated several officers had testified that suspects picked up during the night of the raid had given the names of others engaged in the narcotics traffic, but had not mentioned appellant. The district attorney challenged counsel's statement that others had been named. Defense counsel then asked to have the record read back to prove his assertion. After the court's mild observation that a rereading of testimony during argument might unduly prolong the case, counsel withdrew his request.

Appellant's counsel, having thus withdrawn his request, cannot now be heard to assign as error the court's failure to have it read. Moreover, the court's position in the matter was a proper exercise of the trial court's prerogative in regulating the conduct of the trial and counsels' argument. (48 Cal.Jur.2d § 90, p. 140.)

Appellant's claim of a misstatement by the court of the certain testimony of Officer Lopez relating to the playback of a certain type recording is without merit. Our examination of the transcript shows that there was no substantial misstatement. Moreover, the judge instructed the jury, both formally and informally, that his recollection of the testimony was not infallible; that they were the sole judges of the evidence and were to rely upon their own recollection of the testimony.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied December 14, 1961. and appellant's petition for a hearing by the Supreme Court was denied January 17, 1962.