396 P.2d 5

**STATE of Arizona, Appellee,**

v.

'William W. MILLS and Winifred I. Mills, Appellants.

No. 1351.

Supreme Court of Arizona.

En Banc.

Oct. 22, 1964.

Robert W. Pickrell, Atty. Gen., Phoenix, Norman E. Green, County Atty. of Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

Norman S. Fenton, Tucson, for appellants.

1. A.R.S. § 13–661.A. (1956) defines "theft" to include:
   "3. Knowingly and designingly, by any false or fraudulent representation or pre- tense, defrauding any other person of money, labor or property, whether real or personal."

LOCKWOOD, Vice Chief Justice:

Defendants appeal from a conviction on two counts of obtaining money by false pretenses in violation of A.R.S. §§ 13–661.A.3. and 13–663.A.1.[1]

The material facts, viewed " * * * in the light most favorable to sustaining the conviction," State v. Evans, 88 Ariz. 364, 366, 356 P.2d 1106, 1107 (1960) are as follows: Defendant William Mills was a builder and owned approximately 150 homes in Tucson in December, 1960. Mills conducted his business in his home. In 1960 defendant Winifred Mills, his wife, participated in the business generally by answering the telephone, typing, and receiving clients who came to the office.

In December 1960, Mills showed the complainant, Nathan Pivowar, a house at 1155 Knox Drive and another at 1210 Easy Street, and asked Pivowar if he would loan money on the Knox Drive house. Pivowar did not indicate at that time whether he would agree to such a transaction. Later in the same month Nathan Pivowar told the defendants that he and his brother, Joe Pivowar, would loan $5,000 and $4,000 on the two houses. Three or four days later Mrs. Mills, at Pivowar's request, showed him these homes again.

Mills had prepared two typed mortgages for Pivowar. Pivowar objected to the wording, so in Mills' office Mrs. Mills retyped the mortgages under Pivowar's dictation. After the mortgages had been recorded on December 31, 1960, Pivowar gave Mills a bank check for $5,791.87, some cash, and a second mortgage formerly obtained from Mills in the approximate sum of $3,000. In exchange Mills gave Pivowar two personal notes in the sums of $5,250.00 and $4,200.00 and the two mortgages as security for the loan.

Although the due date for Mills' personal notes passed without payment being made, the complainant did not present the notes for payment, did not demand that they be paid, and did not sue upon them. In 1962 the complainant learned that the mortgages which he had taken as security in the transaction were not first mortgages on the Knox Drive and Easy Street properties. These mortgages actually covered two vacant lots on which there were outstanding senior mortgages. On learning this, Pivowar signed a complaint charging the defendants with the crime of theft by false pretenses.

On appeal defendants contend that the trial court erred in denying their motion to dismiss the information. They urge that a permanent taking of property must be proved in order to establish the crime of theft by false pretenses. Since the complainant had the right to sue on the defendants' notes, the defendants assert that complainant cannot be said to have been deprived of his property permanently.

Defendants misconceive the elements of the crime of theft by false pretenses. Stated in a different form, their argument is that although the complainant has parted with his cash, a bank check, and a second mortgage, the defendants intend to repay the loan.

Defendants admit that the proposition of law which they assert is a novel one in this jurisdiction. Respectable authority in other states persuades us that their contention is without merit. A creditor has a right to determine for himself whether he wishes to be a secured or an unsecured creditor. In the former case, he has a right to know about the security. If he extends credit in reliance upon security which is falsely represented to be adequate, he has been defrauded even if the debtor intends to repay the debt. His position is now that of an unsecured creditor; at the very least, an unreasonable risk of loss has been forced upon him by reason of the deceit. This risk which he did not intend to assume has been imposed upon him by the intentional act of the debtor, and such action constitutes an intent to defraud.[2]

2. See Perkins, Criminal Law 266 (1957).

In People v. Wieger, 100 Cal. 352, 34 P. 826 (1893), the defendant obtained goods representing that he had a capital of $12,000 cash and owed nothing, whereas he had at most not more than $4,500 and owed $10,000. The California court held that it is no defense to the charge of obtaining goods by false pretenses that the defendant intended to pay for the goods he obtained. See also People v. Hand, 127 Cal.App. 484, 16 P.2d 156 (1932); Odom v. State, 130 Miss. 643, 94 So. 233 (1922). In Odom the defendant had obtained $575 in goods and money. To secure the payment of the goods and money he gave a deed of trust on a lot of oxen and log wagons which he represented that he owned. The defendant knew at that time that he did not own the oxen and wagons, but he did intend to pay for the money and property which he received and had paid back a large portion of it when he was indicted. The Mississippi court held that " * * * the intent to cheat or defraud referred to in the statute has no reference whatever to the question whether defendant intended to repay the debt." 130 Miss. at 647, 94 So. at 234.

The cases cited by defendants in support of their contention are distinguishable from the instant case in that they involved theft by larceny, (e. g. People v. Bartges, 126 Cal.App.2d 763, 273 P.2d 49 (1954)). Since the crime of larceny is designed to protect a person's possessory interest in property whereas the crime of false pretenses protects one's title interest, the requirement of a permanent deprivation is appropriate to the former. Cf. State v. Marsin, 82 Ariz. 1, 307 P.2d 607 (1957).[3] Accordingly, we hold that an intent to repay a loan obtained on the basis of a false representation of the security for the loan is no defense.

Defendants next contend that the State must prove that there has been some pecuniary loss to the complainant before the State has established their guilt of theft by false pretenses. They argue that no loss can be shown because their notes are still held by the complainant. Defendants raise the same point when they contend that where actual consideration is exchanged, there can be no crime of obtaining money by false pretenses.

3. In the Marsin case the defendant was convicted of the crime of grand theft. This Court said: "Admittedly the intent to permanently deprive the owner of his possession is an essential ingredient of the offense. Whitson v. State, 65 Ariz. 395, 181 P.2d 822." State v. Marsin, supra, at 3, 307 P.2d at 608. The court noted that although the information charged the crime of grand theft without specifying how the theft was committed, the theories on which the crime was tried were alternatively (1) that the defendant initially took and carried away the property or (2) that the defendant failed to return lost property. Since either theory charged that defendant with larceny rather than false pretenses, the quoted statement is not applicable to the instant case. Furthermore, the Whitson case cited by the Court was clearly a larceny case.

Although there is authority for the proposition that an actual financial loss is necessary to constitute the crime of theft by false pretenses, see Daniel v. State, 63 Ga.App. 12, 10 S.E.2d 80 (1940); McGee v. State, 97 Ga. 199, 22 S.E. 589 (1895), we think the better rule is that there is no requirement that the victim suffer a pecuniary loss so long as he has parted with his property. Nelson v. United States, 97 U.S. App.D.C. 6, 227 F.2d 21, 53 A.L.R.2d 1206, (D.C.Cir.1955), cert. denied 351 U.S. 910, 76 S.Ct. 700, 100 L.Ed. 1445 (1956); People v. Talbott, 65 Cal.App.2d 654, 151 P.2d 317 (1944); United States v. Rowe, 56 F.2d 747 (2d Cir.1932). The defendants focus on the wrong part of the transaction. They direct attention to what the victim obtains. The gist of the offense, however, is concerned with what the defrauder obtains. Once the victim has parted with his property in reliance on a false representation, it is immaterial whether whatever he got in return is equal in exchange value to that with which he parted. Judge Learned Hand put it as follows:

"A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he has suffered a wrong; he has lost his chance to bargain with the facts before him. That is the evil against which the statute is directed." United States v. Rowe, supra at 749.

An argument similar to defendants' was advanced in Talbott, supra. In that case the defendant had obtained loans from various individuals. He executed bills of sale and chattel mortgages on various items of machinery in connection with the loans. He falsely represented that he as seller owned the machinery free from liens and encumbrances. The court held that financial loss is not a necessary element of the crime. In response to defendant's argument that part of the machinery was free and clear and of sufficient value to protect the loan, the court said:

"It was contended that notwithstanding proof of encumbrances as to part, the balance was of sufficient value to protect the loan. Such argument was then, and is now, beside the issue. If all of the property was fraudulently represented as unencumbered, the fact that part of it was actually free and clear and sufficiently valuable to protect the loan, is no defense." 65 Cal. App.2d at 659, 151 P.2d at 320.

Similarly, in Nelson, supra, the defendant offered to give a chattel mortgage on his car as security to obtain appliances for resale and to cover his delinquent account. He represented himself as the owner, but failed to disclose the full amount of an outstanding prior indebtedness se-

cured by a chattel mortgage. The court held that the fact that the car had an equity of between $900 and $1000, roughly five times the value of the household appliances, was immaterial.

■ Defendants' next proposition is that the State failed to show any false representation by the defendants to the victim. On the contrary, the evidence is that both the defendants showed Pivowar the homes at 1155 Knox Drive and 1210 Easy Street; that defendant Mills obtained fire insurance policies on these homes for Pivowar; and that the words "This is a first mortgage." were typed on the instrument. These facts were sufficient for the jury to determine that the defendants represented to Pivowar that he would get first mortgages on these homes.

Defendants' next assertion of error is that the State has failed to show a specific criminal intent to defraud. We think otherwise. In view of all the evidence there were ample circumstances from which the jury could have inferred a criminal intent. As we have previously said:

"[D]efendant asserts that there was no showing of criminal intent to defraud. True there was here, as in most cases of this nature, no direct evidence of intent to defraud. But the presence of this element of the crime of theft by false pretenses is compellingly inferred from the testi-mony and facts previously discussed in this opinion. See A.R.S. § 13-131 (1956)." State v. Mills, 91 Ariz. 206, 210, 370 P.2d 946, 949 (1962).

In their fifth assignment of error the defendants contend that they should have been charged with only one count of grand theft rather than two because the facts, circumstances, parties, documents, point of time, etc. are identical in both counts. During oral argument on appeal the State conceded that it was error to charge the defendants with two counts of grand theft for this one transaction. The State contends, however, that a defendant may not raise this error for the first time on appeal. In support of this contention the State cites State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960); State v. Chekmizoff, 82 Ariz. 176, 309 P.2d 796 (1957); and State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947). All three of these cases are distinguishable from the instant case. In Singleton, supra, defendant was charged by information with three counts involving the murder of three separate persons. On a criminal complaint charging three separate murders, he had been held to answer "for the crime of murder, a felony". On appeal he claimed that the trial court lacked jurisdiction to try more than one count of murder. We held the objection was too late, in the following words:

"The fact that a preliminary examination was never had nor waived shall in

no case invalidate any information in any court *unless the defendant shall object to such information because of such fact before pleading to the merits."* 66 Ariz. at 60, 182 P.2d at 927 (Emphasis in the original.)

State v. Vallejos, supra, involved the failure of defendant to object to the presentation of objects for identification which were not offered in evidence. State v. Chekmizoff, supra, reaffirmed the familiar rule that objection to the admission of evidence cannot be raised for the first time on appeal.

■ However, in State v. Boodry, 96 Ariz. 25, 394 P.2d 196 (July 15, 1964), this Court permitted a defendant, convicted of rape and incest to present for the first time on appeal the proposition that under A.R.S. § 13–1641 an act or omission which is made punishable in different ways under different sections of the law may be punished under either, but in no event under more than one. As in this case the error in the proceeding had not previously been called to the attention of the trial court. By analogy, we hold that these defendants may raise the question of a double punishment for one act for the first time on appeal even though their one act is not made punishable in different ways under different sections of the laws.

■ The State has conceded that the conviction and sentencing on two separate counts was error. However, we are convinced that the error in trying the defendants on one count rather than two under the fact situation would not result in a different verdict and therefore is not prejudicial so as to necessitate a new trial. State v. Dutton, 83 Ariz. 193, 318 P.2d 667 (1957). Since the trial court imposed sentences on each count, consecutively, it is necessary that the case be remanded for resentencing on the one count only. Had the sentences been concurrent we could have followed the procedure of setting aside the lesser sentence only. State v. Boodry, supra.

■ Defendants contend that they were denied a fair trial in that the age and physical handicaps of the complaining witness made a normal trial impossible. This point was also raised for the first time on appeal. In effect, defendants are asking us to find that the complaining witness lacked the testimonial capacities necessary to make him a competent witness. Matters of competency of witnesses are discretionary with the trial court. Failure to raise such objection at the time of trial precludes raising it on appeal. Nunn v. Slemmons' Adm'r, 298 Ky. 315, 182 S.W.2d 888 (1944); State v. Young, 153 Iowa 4, 6, 132 N.W. 813, 814 (1911). Cf. State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011 (1951); State v. Upton, 65 Ariz. 93, 174 P.2d 622 (1946); 2 Wigmore, Evidence § 486 (3d ed. 1940).

Defendants also contend that the remarks of the prosecutor during his argument to the jury were inflammatory and prejudicial. In this regard the defendants refer to the following as being prejudicial and inflammatory: (1) the prosecutor's statement that although defense counsel is a very honorable person, the defendants were expected to come up with something in explanation of their actions because they had a lawyer; (2) the prosecutor's misstatement of testimony; (3) the prosecutor's statements that defense counsel didn't mean what he said, that defense counsel's argument was spurious, and that defense counsel's contention that the State hadn't shown a false representation was a phony argument; (4) the prosecutor's remark that if he misstated testimony, he didn't do so deliberately and that defense counsel would probably make mistakes of that character also.

While the statements of the prosecutor referred to above may have been intemperate, they were not calculated to inflame the minds of the jurors with passion or prejudice. We have stated the guiding principle in this area as follows:

"The general rule is that whether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. * * * If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment." State v. Merryman, 79 Ariz. 73, 74–75, 283 P.2d 239, 241 (1955). See also State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955); Note, 54 Colum.L.Rev. 946 (1954).

Finally, defendant Winifred Mills contends that the State produced no evidence to show that she had made a misrepresentation or that she misrepresented knowingly. With respect to the element of misrepresentation, the State showed that she had taken Pivowar to the homes on Knox Drive and Easy Street. Furthermore, the mortgages which she typed state: "This is a first mortgage subject only to 1960 taxes." That statement was false since both homes were subject to prior mortgages.

The State further produced testimony showing that she had signed the senior mortgages which were outstanding on the homes on Easy Street and Knox Drive. Even if she did not know that the mortgages she typed did not cover the Easy Street and Knox Drive homes, her signing of the nine senior mortgages on these properties is sufficient evidence from which the jury could infer that she knew the statement "This is a first mortgage" was false.

Since we are remanding the case for resentencing on only one count of theft by false pretenses, it is unnecessary to discuss appellants' contention that their sentences were excessive.

Affirmed in part, reversed in part, and remanded for resentencing.

UDALL, C. J., STRUCKMEYER and BERNSTEIN, JJ., and JENNINGS, J. (Retired), concurring.

NOTE: Justice EDWARD W. SCRUGGS having disqualified himself, the Honorable RENZ L. JENNINGS, Retired Justice, was called to sit in his stead and participate in the determination of this appeal.