[No. AO19400. First Dist., Div. Three. Feb. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY RAY COOK, Defendant and Appellant.

**COUNSEL**

Sheldon Portman, Public Defender, Robert A. Weeks and Thomas H. Dettmer, Deputy Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

SCOTT, J.—Appellant Terry Ray Cook was charged with four counts of solicitation to commit murder. (Pen. Code, § 653f, subd. (b).) After submitting the matter on the preliminary examination transcript, he was found guilty as charged. He received consecutive sentences of one year and four months on each count, with the final four months stayed pursuant to Penal Code section 1170.1, subdivision (a). These sentences were also consecutive to a term appellant is currently serving. Appellant's primary contention is that the evidence establishes that he committed only one offense, not four. In the alternative, he argues that the imposition of consecutive sentences violates Penal Code section 654.

While appellant was in jail, he asked a cellmate, Dwight Abbot, to kill four people when Abbot was released, in exchange for a "couple thousand dollars" and a Mustang automobile. He asked Abbot to kill a young rape victim of appellant's, whom he wanted killed because she had testified against him. Appellant also wanted Abbot to rape and torture her and tell her why she was being killed. He asked Abbot to kill her parents, because they did not prevent her from testifying against him. Finally, he asked *Abbot to kill her girl friend, who would probably be with her when Abbot* found the rape victim. Appellant's conversations with Abbot about the killings extended over a period of time, about two weeks. Appellant wrote a description of these victims; that document was admitted into evidence.

I

The crime of solicitation consists of asking another to commit one of the crimes specified in Penal Code section 653f, with the intent that the crime be committed. (*People* v. *Bottger* (1983) 142 Cal.App.3d 974, 984 [191 Cal.Rptr. 408].) The gist of the offense is the solicitation, and the offense is complete when the solicitation is made. It is immaterial that the crime which is the object of the solicitation is never accomplished, that no overt acts are taken toward its accomplishment, or even that the crime is impossible to accomplish. (*People* v. *Shapiro* (1959) 170 Cal.App.2d 468, 479 [338 P.2d 963]; *Laurel* v. *Superior Court* (1967) 255 Cal.App.2d 292, 298 [63 Cal.Rptr. 114].) Section 653f has a twofold purpose: to protect individuals from being exposed to inducement to commit or join in the commission of crimes, and to prevent solicitations from resulting in the commission of the crimes solicited. (*Benson* v. *Superior Court* (1962) 57 Cal.2d 240, 243 [18 Cal.Rptr. 516, 368 P.2d 116].) Section 653f, subdivision (b), prohibits soliciting another to commit murder.

Briefly stated, appellant's argument is that the gist of the offense is the solicitation itself, and that the evidence here establishes only one incitement or solicitation, notwithstanding that four potential victims were involved. In support of his argument, he draws an analogy to the crime of conspiracy, and in particular to the principle that a single conspiracy may embody an agreement to commit several crimes. (See *Braverman* v. *United States* (1942) 317 U.S. 49, 53 [87 L.Ed. 23, 28, 63 S.Ct. 99]; *People* v. *Cossey* (1950) 97 Cal.App.2d 101, 110 [217 P.2d 133].) He also relies on Penal Code section 7, which provides in relevant part, ". . . the singular number includes the plural, and the plural the singular." He reasons that in light of section 7, the prohibition against soliciting the commission of "murder" in section 653f, subdivision (b), must be read to include murder*s*, and that therefore he has committed only one offense.

We have found no California case precisely on point, but at least one other court has squarely considered the question at hand. In *Meyer* v. *State* (1981) 47 Md.App. 679 [425 A.2d 664], defendant was convicted of four counts of solicitation of murder, after soliciting his cellmate to kill his ex-wife, two policemen, and another man. As does appellant in this case, defendant argued that despite the multiplicity of victims, the evidence established a single solicitation; he too relied on *Braverman* v. *United States, supra,* 317 U.S. 49 to urge that if a single agreement to commit more than one unlawful act is but one conspiracy, the same rule should apply to criminal solicitation.

First, the *Meyer* court rejected the notion that there could not be successive and distinct incitements or solicitations in one conversation; it also

rejected as too simplistic the theory that there are necessarily as many so-licitations as potential victims. (*Meyer* v. *State, supra,* 425 A.2d at pp. 669-670.) As for the analogy to conspiracy, the court explained that even if it were to accept that analogy, the question of whether there had been one solicitation or several would still depend on the circumstances.

"*Braverman,* of course, but begs the question here. At best, it reinforces the requirement that we focus on the number of incitements and not solely on the number of victims. The number of victims is important only as it may be evidence of the number of incitements. By way of example, an entreaty made by a solicitor to blow up a building in the hope that two or more particular persons may be killed in the blast could be characterized as one solicitation, notwithstanding that implementation of the scheme might violate several different laws or, because of multiple victims, constitute separate violations of the same law. The multiple criminality of the imple-mentation would not, in that instance, pluralize the incitement, which was singular. That is the thrust of *Braverman.* But that is quite different from the situation in which the solicitee is being importuned directly to commit separate and distinct acts of murder—to kill, individually, several different specified victims—possibly at different times and places and by different means and executioners. In the latter case, there is not a single incitement but multiple ones, each punishable on its own." (*Meyer* v. *State, supra,* 425 A.2d at p. 670.)

We do not attempt to set forth a definitive test by which to determine in every case whether there has been only a single solicitation. ■ Never-theless, we agree with the *Meyer* court that with respect to solicitation of murder, if the evidence and the reasonable inferences from that evidence establish that the solicitee has been asked to commit separate and distinct acts of murder, that evidence is sufficient to establish separate solicitations. ■ Of course, when we consider that evidence, we must view it in the light most favorable to the judgment, and presume in support of the judg-ment the existence of every fact the trier could reasonably have deduced from the evidence. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 578 [189 Cal.Rptr. 855, 659 P.2d 1144].)

■ In this case, while the evidence adduced at the preliminary hearing was sparse, it clearly and unmistakably established that appellant asked Ab-bot to kill four specific victims. Different motives were involved for the rape victim, her parents, and her friend. Of the four murders, only the rape victim's killing was to be prefaced with a message of revenge from appel-lant. Appellant provided directions to her neighborhood, and told Abbot to check the phone book for the family's precise address, but added that Abbot might find her and her friend riding bicycles. The reasonable inference from

all the evidence was that these killings might have to occur at different times and places, and perhaps by different means. In sum, the evidence and the inferences from the evidence established that appellant solicited the commission of four separate acts of murder; the evidence is therefore sufficient to support his four convictions.

In a related argument, appellant also contends that the evidence was insufficient to hold him to answer for four offenses rather than one. ■ However, when the evidence at trial supports a conviction, the question whether evidence at the preliminary hearing supported probable cause is moot. (*People* v. *Hampton* (1981) 116 Cal.App.3d 193, 199 [172 Cal.Rptr. 25].)

## II

■ Finally, appellant contends that even if he was properly convicted of four offenses, the imposition of consecutive sentences violated Penal Code section 654. The contention is without merit. Section 654 does proscribe double punishment where there is an indivisible course of conduct which gives rise to more than one violation of the same Penal Code section. (*People* v. *Neder* (1971) 16 Cal.App.3d 846, 853 [94 Cal.Rptr. 364]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 18, fn. 1 [9 Cal.Rptr. 607, 357 P.2d 839].) However, the section is not applicable where an act or course of conduct results in crimes of violence against separate persons, because the purpose of the protection against multiple punishment is to insure that punishment is commensurate with criminal liability. "A defendant who commits an act of violence with the intent to harm more than one person . . . is more culpable than a defendant who harms only one person." (*Id.,* at p. 20.) We conclude that the same principle should govern here. Although appellant did not actually commit an act of violence, he solicited the commission of four separate violent acts. Surely he is more culpable than would be a person who solicited only one such act. Accordingly, whether or not appellant engaged in an indivisible course of conduct, multiple punishment is appropriate and not prohibited by section 654.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1984. Broussard, J., was of the opinion that the petition should be granted.