[No. D003807. Fourth Dist., Div. One. May 19, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PERRY MOROCCO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of parts 1, 3 and 4.

COUNSEL

Martin James Elmer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Defendant James Perry Morocco appeals after a jury found him guilty of two counts of solicitation of murder. (Pen. Code, § 653f) and one count of sale of a substitute in lieu of a controlled substance (Health & Saf. Code, § 11355). The principal issue is whether Morocco's request to have an acquaintance kill two specifically named individuals constitutes one or two counts of solicitation of murder. By analogy to the crime of conspiracy and consistent with prior California precedent, we conclude Morocco may only be properly convicted of one count of solicitation and accordingly, we order stricken his conviction on the second count. As to Morocco's

remaining contentions we conclude the prosecutor's ambiguous comment on his failure to testify did not prejudice Morocco and that the trial court acted within its discretion in sentencing him to the aggravated term on the first solicitation count and in imposing a consecutive sentence on the controlled substance count. As so modified we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Morocco and his wife of 23 years, Peggy, were divorced in 1983. Shortly thereafter, Peggy married Thomas Steele. Three of Morocco's four sons had left home to join the military. The youngest son, 13-year-old Terry, lived with Morocco. In late 1984, however, Terry indicated he wished to begin living with his mother. After a heated dispute, Morocco and Peggy agreed that Terry would begin living with Peggy after the school year ended in June 1985.

In mid-1984, Morocco met Robert Wingard, who it turns out was a police informant. Having witnessed Wingard's involvement in a fight, Morocco was impressed with how Wingard handled himself. In early 1985, Morocco approached Wingard about delivering drugs and collecting money for him. Thereafter, Wingard made some deliveries for Morocco.

In a series of meetings during May of 1985, Morocco disclosed a plan in which Wingard was to kill Tom and Peggy Steele. During the early discussions Wingard was unaware that Peggy Steele was Morocco's ex-wife. Morocco explained that Tom Steele was responsible for his having been severely beaten in connection with a business deal involving the sale of a bar.[2] As discussions progressed, Morocco told Wingard that the Steeles were to be killed inside their home. Morocco was very concerned about Wingard being caught and so he told him that if anyone else was in the house, they should be killed as well. This included Morocco's oldest son, who Morocco thought might also be present. Morocco instructed Wingard that Peggy was to be killed "nice and easy." As to Tom Steele, however, "he didn't give a shit." In exchange for the killings, Morocco told Wingard he would supply him with drugs and weapons.

On June 3, 1985, Morocco drove Wingard to the Steeles' home so that he would know how to get there. He also described the types of cars Tom and Peggy drove.

---

[2]Peggy Steele testified that she and Morocco sold a bar to an individual named Latham in 1977. Shortly after the sale, Morocco was badly beaten and hospitalized. Both she and Tom Steele testified that Tom never had any business dealings with Morocco.

The next day, Wingard went to Morocco's residence after having been wired for sound by the police. During the ensuing conversation, Morocco gave Wingard a substance he claimed was a methamphetamine[3] and a loaded .38 caliber handgun. As Wingard was getting ready to leave, the police arrived and arrested Morocco.

## DISCUSSION

### 1. *Griffin Error**

. . . . . . . . . . . . . . . . . . . . .

### 2. *Solicitation—One Count or Two?*

 Morocco contends the record does not support his conviction for two separate counts of solicitation of murder. He argues that the essence of the crime is the request (see *People* v. *Miley* (1984) 158 Cal.App.3d 25, 33-34 [204 Cal.Rptr. 347]) and that the evidence clearly demonstrates a single request made to Wingard, albeit a request to kill two and possibly more persons.

For our purposes, the resolution of this issue is framed in large part by two recent California cases. In *People* v. *Cook* (1984) 151 Cal.App.3d 1142 [199 Cal.Rptr. 269], the court treated a similar argument made by the defendant there as an issue of first impression in California. Relying exclusively on an opinion of the Maryland Court of Appeal (*Meyer* v. *State* (1981) 47 Md. App. 679 [425 A.2d 664, 24 A.L.R.4th 1313]), *Cook* concluded it is a question of fact whether a request to kill multiple victims constitutes one or more than one solicitation. In resolving the factual inquiry, the court indicated that consideration should be given to whether the requested crimes involved different motives and were to occur at different times by different means. (151 Cal.App.3d at pp. 1146-1147.) Because it assumed the trial judge had made every factual finding necessary to support the judgment (*id.* at p. 1146), the *Cook* court determined that substantial evidence supported the finding of multiple solicitations and affirmed the judgment. (*Id.* at p. 1147.)

In *People* v. *Miley, supra,* 158 Cal.App.3d 25, the court considered a situation in which the defendant requested that another individual commit three murders and several related crimes. Originally charged as six counts of solicitation, the trial court consolidated the counts so that defendant was charged

---

[3]When tested, the substance turned out to be caffeine.
*See footnote 1, *ante,* page 1449.

with a single count of solicitation. Approving the consolidation, the Court of Appeal referred to *Cook* and distinguished it as follows: "In *Cook,* the solicited killings 'might have to occur at different times and places, and perhaps by different means.' Accordingly, the court upheld Cook's conviction of four counts of solicitation to commit murder. In this case, on the other hand, the solicited crimes were all part of one package; each offense would be consummated (or not) depending upon the circumstances encountered by the solicitee. Therefore, the consolidation was proper." *(Id.* at p. 31, fn. 4.)

*Cook* appropriately acknowledges the conceptual relationship between the crimes of conspiracy and solicitation. Just as the "gist" of a conspiracy is the agreement (see, e.g., *People* v. *Cancimilla* (1961) 197 Cal.App.2d 242, 249 [17 Cal.Rptr. 498]) the gist of a solicitation is the request. The conceptual underpinnings of the two crimes are quite similar in that both serve as vehicles to punish planned crimes before they reach the stage of an attempted crime. In many respects, the difference between solicitation and conspiracy lies in the response to the solicitee. If he agrees to cooperate in committing the crime, a conspiracy is formed and he becomes a coconspirator. If he reports the planned crime to authorities, he is an informant and the crime is "merely" a solicitation.

■ Where two or more persons agree to commit a number of criminal acts, the test of whether a single conspiracy has been formed is whether the acts "were tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result." *(Blumenthal* v. *United States* (1947) 332 U.S. 539, 558 [92 L.Ed. 154, 169, 68 S.Ct. 248]; see also *People* v. *Skelton* (1980) 109 Cal.App.3d 691, 717-718 [167 Cal.Rptr. 636]; *People* v. *Elliott* (1978) 77 Cal.App.3d 673, 685 [144 Cal.Rptr. 137].) We believe a similar test is applicable in determining whether multiple solicitations have occurred. It is well-settled law that "the question whether one or multiple conspiracies are present is a question of fact, to be resolved by a properly instructed jury" *(United States* v. *Orozco-Prada* (2d Cir. 1984) 732 F.2d 1076, 1086), just as the court in *People* v. *Cook* concluded that the question whether one or multiple solicitations took place is a question of fact. (151 Cal.App.3d at p. 1146.) In making this determination, the jury should be instructed to consider whether the multiple crimes requested by the defendant were part of a "larger, all-inclusive" " plan with a single objective and/or motive. (Cf. *Blumenthal, supra,* 332 U.S. at p. 558 [92 L.Ed. at p. 169]; see also *People* v. *Miley, supra,* 158 Cal.App.3d at p. 31, fn. 4.) Where the jury has been appropriately instructed in making this evaluation, the role of the appellate court is limited to determining whether the record provides substantial evidence to support the jury finding.[4]

---

[4]Obviously in the absence of such instructions, a court cannot "presume in support of the judgment the existence of every fact the trier could reasonably have deduced from the

(*Cook, supra,* 151 Cal.App.3d at p. 1146; cf. *Orozco-Prada, supra,* 732 F.2d at p. 1087.)

 The jury here received no instructions on the issue of single versus multiple solicitation(s). Arguably, that fact in itself would mandate reversal for a retrial. The parties, however, have ignored the instructional issue and have focussed instead on whether substantial evidence supports the jury's guilty verdict on two counts of solicitation. We find it unnecessary to reverse for a retrial because we agree with Morocco that the evidence, even when viewed in the light most favorable to the prosecution, establishes but a single crime of solicitation. The potential victims were a husband and wife. They were to be killed at the same time, presumably by the same means. The record is very unclear as to Morocco's motive in soliciting the killings, but there is certainly no suggestion of an independent motive or objective as to each victim. Whatever the distorted plan Morocco fashioned, it appears to have encompassed both Tom and Peggy Steele.

Accordingly, we will order stricken Morocco's conviction on the second count of solicitation.

3., 4.*

. . . . . . . . . . . . . . . . . .

### Disposition

The judgment is modified to strike the conviction on count two (solicitation, Pen. Code, § 653f). As modified, the judgment is affirmed.

Kremer, P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 1987. Lucas, C. J., and Panelli, J., were of the opinion that the petition should be granted.

---

evidence." (*Cook, supra,* 151 Cal.App.3d at p. 1146.) Because it was not a jury case, *Cook* understandably did not address the instructional issue. It is unnecessary for us to consider whether it was appropriate for the *Cook* court to indulge in such a presumption given the fact that it was confronting an issue of first impression under California law.

*See footnote 1, *ante,* page 1449.