[No. D005393. Fourth Dist., Div. One. Apr. 21, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN CHRISTOPHER WILLIAMS, Defendant and Appellant.

440

**COUNSEL**

E. Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KREMER, P. J.**—John Christopher Williams entered a negotiated plea of guilty to three counts of soliciting murder (Pen. Code,[1] § 653f, subd. (b))

---

[1] All statutory references are to the Penal Code unless otherwise specified.

and one count of burglary (§ 459). Williams admitted the burglary was of an inhabited dwelling and that he took property worth in excess of $25,000. (§ 12022.6, subd. (a).) The court sentenced Williams to serve nine years in prison: the middle term of four years for burglary enhanced by one year for taking property worth over $25,000 and three consecutive terms of one year and four months each (one-third the middle term) for three counts of soliciting murder. Williams appeals.

As Williams pleaded guilty, the facts are drawn from the probation report.

Around January 16, 1985, Williams entered the residence of his in-laws without their permission or knowledge. He removed $100,000 in jewels belonging to his wife's parents. He took the jewels with the intent to use them to pay someone to kill his in-laws.

During May 1986 Williams asked a coworker to help him hire a hit man. Williams said "I want three certain individuals put out of their misery, I must have them completely out of my life before I get a year older." Williams added he deserved all the finer things in life and to reach this, he must have "M & M" (Melvin Moss), his wife and their daughter, Rosie, out of the way. Later, he agreed to pay $10,000 each for the three killings. Williams showed the coworker the stolen jewels which he proposed to use as payment for the killings.

The coworker told Williams's father-in-law, Melvin Moss, what Williams had said and the two contacted the police. An undercover officer contacted Williams. The two had several telephone discussions about the killings. Williams spoke in code referring to the victims as "cans of paint" and the method of the proposed killings as "brushing it on the wall." In a conversation with his coworker held after he had spoken to the feigned hit man, Williams said he was "paranoid" about discussing the "deal" and "[t]hat's why I kept talking in code, you know paint, enamel, sprayer, etc., I gotta protect myself. You know I would terminate the three M&M's myself but this is much more professional and I won't get my hands dirty doing it."

Williams offered the undercover officer the stolen jewels as payment for the killings. When the officer said he would need information about the intended victims, Williams said "I can give you locations, the scheds and stuff like that, to get the workmen there." On May 21, Williams met the "hit man" in Coronado. He described the Mosses' home and their habits and said he wanted Mrs. Moss's diamond ring as proof the job had been done.

Later that evening, Williams met again with the "hit man" who gave him the requested ring and said ". . . it's over." It was. Williams was arrested.

Williams contends: the court erred in imposing a separate consecutive term for the burglary because it was committed for the purpose of carrying out the remaining offenses and erred in imposing separate consecutive sentences for the three counts of solicitation of murder because he engaged in only one course of conduct in committing those crimes.

## I

■ Williams cites *People v. Jaramillo* (1976) 16 Cal.3d 752 [129 Cal.Rptr. 306, 548 P.2d 706], and *People v. Martinez* (1985) 171 Cal.App.3d 727 [217 Cal.Rptr. 546], in support of the principle, section 654 prohibits multiple or double punishment for one course of conduct when one principle objective is involved. He cites *People v. Greer* (1947) 30 Cal.2d 589 [184 P.2d 512], in support of a corollary rule, multiple punishment is prohibited for two separate acts when one is committed in the process of accomplishing the other. He argues he committed the burglary to obtain money to pay for the murders he was soliciting. However, his argument is defeated by the principle expressed in *People v. Beamon* (1973) 8 Cal.3d 625, 639, footnote 11 [105 Cal.Rptr. 681, 504 P.2d 905], ". . . a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." Williams committed burglary in January and solicited murder the following May. The crimes were divisible in time. Imposition of consecutive sentences was therefore permissible.

## II

■ Williams also argues the trial court erred in imposing three separate terms for the solicitations of murder because it unwittingly punished him for a single course of conduct. He recognizes multiple punishment is permissible notwithstanding a single course of conduct if there are multiple victims to acts of violence. However, he argues, his solicitation of murder here was analogous to the defendant firing a series of shots into a crowd of people. (See *People v. Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121].) Williams argues in *Avalos,* the Supreme Court held that multiple punishment (i.e., consecutive terms) was precluded by section 654 because there was but one act of violence. The court stated: "It seems that the court was mistaken when it found that this offense involved separate acts of violence; defendant's act was directed against more than one victim, but involved a single shooting spree on a single occasion." (*Id.* at p. 233.)

The quote from *Avalos* is taken from a discussion regarding use of "multiple victims" and the callousness of the crimes as aggravating factors. Why the court used the phrase "separate acts of violence" is not disclosed. Read in the light most favorable to Williams, *Avalos* holds only one *act,* not only

one *crime* was committed. *Avalos* does not hold that a defendant who fires a series of shots into a crowd can be sentenced for killing or harming only one of the victims. In fact, in *Avalos,* consecutive sentences were imposed for one murder and two assaults with a deadly weapon which occurred as a result of the shots. *Avalos* is not authority for the principle consecutive terms are prohibited although a defendant injures or kills multiple victims through a single act or course of conduct.

More relevant is *People* v. *Cook* (1984) 151 Cal.App.3d 1142 [199 Cal.Rptr. 269]. In *Cook,* the court faced the issue before this court. *Cook* distinguished a solicitation to commit one act which kills multiple victims (e.g., to blowup a building and to kill the intended victim and whoever else might be in the building) from a solicitation to "commit separate and distinct acts of murder, . . ." (*Id.* at p. 1146.) In *Cook,* as here, the solicitee was asked to kill a specified number of identified individuals. In *Cook,* the court noted the murders were solicited for different motives and could have been committed at different times and places. As the *Cook* court recognized, each case presents a factual question as to whether the defendant had committed one crime or multiple crimes through a solicitation to murder. It concluded in the case before it one solicitation was for four separate crimes. It affirmed consecutive sentences. (*Id.* at p. 1147.)

In *People* v. *Morocco* (1987) 191 Cal.App.3d 1449 [237 Cal.Rptr. 113] this court decided the record before it did not support conviction of two counts of solicitation to murder after a jury had rendered guilty verdicts on two counts. In *Morocco,* the defendant had made a single solicitation to murder two people. The court, citing *People* v. *Cook, supra,* 151 Cal.App.3d 1142, recognized a factual question existed as to whether the solicitation was one or two crimes. It determined, based on the record in that case, only one crime was committed.

Here, we requested counsel to file supplemental briefs on the applicability of *People* v. *Morocco.* ▮ In response, Williams argues his guilty plea was invalid because under the law as interpreted in *Morocco,* he did not commit two of the crimes he had pled guilty to. ▮ However, " ' "[a] judgment entered upon a plea of guilty is not appealable on the merits, and irregularities not going to jurisdiction or to the legality of the proceedings will not be reviewed." ' " (*People* v. *Wakefield* (1987) 194 Cal.App.3d 67, 70 [239 Cal.Rptr. 277], quoting *People* v. *Howard* (1976) 55 Cal.App.3d 373, 376 [127 Cal.Rptr. 557].)

▮ Citing *In re Crumpton* (1973) 9 Cal.3d 463 [106 Cal.Rptr. 770, 507 P.2d 74], Williams argues the plea here was entered as a result of a misapprehension of law and should be set aside by writ of habeas corpus. He asks

us to treat the pleadings on appeal as a petition for that writ in the interest of judicial economy. Without in any way limiting Williams's right subsequently to seek habeas relief, we decline for two reasons to transform these proceedings into a collateral attack on the judgment. First, we have no allegation by Williams or his counsel that the plea was actually entered due to misapprehension of the law. Since the plea was entered after *People v. Cook, supra,* 151 Cal.App.3d 1142, it is entirely conceivable that the plea fully comprehended the principle that whether a single conversation is one or more solicitations is a question of fact and was entered to receive a lighter sentence than possible had Williams been tried on the charges in the information and sentenced pursuant to sections 1170 and 1170.1.[2] Second, and unlike the situation in *Crumpton,* it is not clear from this record that only one result was possible had the matter gone to trial. (See *In re Crumpton, supra,* 9 Cal.3d at p. 468.)

The facts apparent on this record would support a trial counsel's conclusion and advice that the solicitations were factually distinct. Both *Cook* and *Morocco* stress that whether one or multiple solicitations has occurred is a question of fact. While both those cases gave weight to whether the proposed killings were to occur at a single time and place and for a single motive, neither case gives talismanic significance to those factors. It is certainly the case that other facts may shed light on the issue.

Here, Williams solicited the killings of three "certain individuals" the death of each being important to his purpose. Significantly, he agreed to pay a separate consideration, $10,000, for each murder. The facts regarding venue are ambiguous. At one point Williams agreed to give the locations of the victims while at another, he described the victims' home, implying the job could be done there. It is, however, fair to infer that, given Williams's insistence all three die, the "hit man" was to understand that the killings should occur at different locations if that was what it took. Finally, it would be facile to ascribe a singular motive to Williams. It appears that the three victims were to be eliminated so Williams could live well and have "all the finer things in life." In a related context, the Supreme Court has observed that the fact a thief wishes to garner wealth does not mean that a series of otherwise distinct thefts were committed for a single objective for the

---

[2] The plea was entered on condition Williams receive a maximum term of nine years in prison. Absent the condition, he could have been sentenced to eleven years in prison. (§ 653f, subd. (b) [term for solicitation to murder in 1985 was two, four and six years]; § 1170.1, subd. (a).)

Williams argues the maximum term was eight years, four months since he could not, under the law as interpreted in *Morocco,* be convicted of but one count of solicitation to murder. In making the argument, he overlooks the expression in *Morocco* that whether there were multiple solicitations is a question of fact. Having entered the guilty plea to three counts of solicitation to murder, he admitted he made three solicitations. The factual issue is resolved.

purpose of determining whether multiple punishments may be imposed. (*People* v. *Perez* (1979) 23 Cal.3d 545, 552 [153 Cal.Rptr. 40, 591 P.2d 63].) From these facts, we conclude that Williams's guilty plea effectively admitting separate solicitations is, on this record, founded in fact and cannot without more warrant habeas relief.

■■■ Williams also argues *Morocco* was a change of law, being the first case to hold a single request may result in a single solicitation to murder, regardless of the number of potential victims. He is mistaken. While *Morocco* may well be the first case to find a single solicitation in a multiple potential victim situation, its holding is no more than an application of preexisting law. *Morocco* considered the issue whether a single or multiple solicitations were made through a single request. Citing *People* v. *Cook, supra,* 151 Cal.App.3d 1142, *Morocco* held this a question of fact to be resolved by the jury after being properly instructed. *Morocco* did not change the law and is in accord with *People* v. *Miley* (1984) 158 Cal.App.3d 25 [204 Cal.Rptr. 347] and *People* v. *Cook, supra.* The judgment in *Morocco* was reversed because the jury was not given the appropriate instructions to resolve the factual issue of whether a single or multiple solicitations were made and a solicitation to murder conviction was stricken because the evidence, even when viewed in the light most favorable to the prosecution, revealed but a single solicitation. (*People* v. *Morocco, supra,* 191 Cal.App.3d at pp. 1453-1454.) Here, because of Williams's plea of guilty before a preliminary hearing, there is no evidence.

Williams entered a guilty plea to having committed three solicitations to murder. He argues section 654 forbids imposing separate sentences.

Williams's argument was raised and resolved in *People* v. *Cook, supra,* 151 Cal.App.3d 1142. The court stated: "[Section 654] is not applicable where an act or course of conduct results in crimes of violence against separate persons, because the purpose of the protection against multiple punishment is to insure that punishment is commensurate with criminal liability. 'A defendant who commits an act of violence with the intent to harm more than one person . . . is more culpable than a defendant who harms only one person.' [Citation.] We conclude that the same principle should govern here. Although appellant did not actually commit an act of violence, he solicited the commission of four separate violent acts. Surely he is more culpable than would be a person who solicited only one such act. Accordingly, whether or not appellant engaged in an indivisible course of conduct, multiple punishment is appropriate and not prohibited by section 654." (*Id.* at p. 1147.)

We agree. The judgment is affirmed.

Wiener, J., and Benke, J., concurred.