Filed 5/28/14  P. v. Montgomery CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248591 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA124213) |
| v. | |
| ISIAH MONTGOMERY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura R. Walton, Judge.  Affirmed in part, reversed in part and remanded with directions.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Isiah Montgomery appeals from a judgment which sentences him to state prison for 16 years for one count of attempting to dissuade a witness or victim from attending or testifying at a trial in violation of Penal Code[1] section 136.1, subdivision (a)(2) plus sentencing enhancements from two prior convictions. Montgomery was also sentenced to concurrent six year terms on three additional counts of attempting to dissuade a victim from testifying and one count of attempting to dissuade a victim in assisting in a prosecution. Montgomery contends on appeal that the sentences on the additional counts should have been stayed pursuant to section 654. We agree that one of the sentences should have been stayed. Montgomery also challenges the 10-year protective order issued by the trial court. We find the protective order was authorized by section 136.2. Finally, the parties agree the matter should be remanded to the trial court to set forth in writing its reasons for striking a prior strike. Accordingly, we reverse in part, affirm in part, and remand to the trial court with directions.

## BACKGROUND

Montgomery and Concepcion H. began to date in January or February 2012. During their relationship, Montgomery often gave Concepcion gifts and money. When she attempted to end the relationship in March and reunite with her boyfriend of 12 years, Montgomery began to harass her. He called her constantly, sometimes more than 30 times a day, and followed her wherever she went. Concepcion applied for and received a protective order against Montgomery on May 29, 2012. Despite the protective order, Montgomery went to her workplace and home, hoping to speak with her. He also continued to call and harass her.

Montgomery was arrested for violating the protective order on July 27, 2012. That day, Montgomery told Concepcion "if I go to jail, it's going to be on" and [it's] going to get ugly." He then sent letters to Concepcion while incarcerated, urging her not to come to court or cooperate with the prosecution. In total, he sent her eight letters and two postcards from jail. In the letters, he told her he loved her and pleaded with her not

---

[1] All further section references are to the Penal Code, unless otherwise specified.

2

to go to court.  He also asked her to tell his probation officer that nothing happened.  In an amended information dated November 30, 2012, Montgomery was charged with four counts of knowingly and maliciously attempting to prevent or dissuade a witness or victim from attending or testifying at any trial, proceeding, or inquiry, (§ 136.1, subd. (a)(2); counts 5-8), and one count of attempting to prevent or dissuade a victim of a crime from assisting in the prosecution of a complaint, indictment, or parole violation (§ 136.1, subd. (b)(2); count 9.)  Montgomery was also charged with making criminal threats against Concepcion.  (§ 422, subd. (a); count 12.)  Counts 5 through 9 were predicated on letters sent to Concepcion by Montgomery from jail.  Count 5 was based on a July 31, 2012 letter, count 6 on an August 5, 2012 letter, count 7 on an August 7, 2012 letter, count 8 on an August 12, 2012 letter and count 9 on the same August 5, 2012 letter as count 6.

A jury found Montgomery guilty of counts 5 through 9 and not guilty of count 12.  The trial court sentenced Montgomery to six years in state prison on count 5, the upper term of three years doubled to six years because of one prior strike conviction pursuant to section 1170.12, subdivisions (a)-(d) and 667, subdivisions (b)-(i).  The trial court also found two prior convictions to be true pursuant to section 667, subdivision (a)(1), each of which added five years to the sentence, for a total of 10 years.  The trial court further imposed various fines and fees not relevant to this appeal.  In total, Montgomery was sentenced to 16 years in state prison.  As to the remaining counts, the trial court imposed six-year sentences to run concurrently, choosing the upper term of three years doubled to six years because of one prior strike conviction pursuant to section 1170.12, subdivisions (a)-(d) and 667, subdivisions (b)-(i).  The trial court further issued a criminal protective order against Montgomery which ordered him to have no contact with Concepcion and not come within 100 yards of her.  Montgomery timely appealed.

**DISCUSSION**

On appeal, Montgomery contends the trial court erred when it failed to stay the sentences on counts 6 through 9 pursuant to section 654. Additionally, he challenges the protective order issued in connection with his sentence, claiming it was unauthorized. Although it did not file an appeal in this matter, the Attorney General raised an issue in its Respondent's Brief, noting the trial court failed to set forth its reasons in writing for partially granting Montgomery's *Romero*[2] motion. We address each issue below.

**I.    Section 654**

Montgomery contends the trial court violated section 654 and his due process rights by imposing concurrent sentences on counts 6 to 9 because the conduct underlying those counts was part of an indivisible course of conduct pursuant to one objective – to attempt to persuade Concepcion not to go to court and not to cooperate with the authorities. We disagree, in part.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." The Supreme Court has enlarged the scope of section 654 to include a course of conduct with a single criminal objective within the definition of "an act or omission." (*People v. Beamon* (1973) 8 Cal.3d 625, 638.) Whether section 654 is applicable to a given series of offenses is for the trial court to determine, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them. (*People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657.)

---

[2]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

4

In *Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal),* the high court held that section 654 applied not only where there was one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. A "course of conduct" may be considered a single act within the meaning of section 654 and therefore be punishable only once, or it may constitute a "divisible transaction" which may be punished under more than one statute. (*Ibid*.) The *Neal* court explained, "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Ibid.*)

The Supreme Court later clarified that "section 654 does not bar multiple punishment for multiple violations of the same criminal statute." (*People v. Correa* (2012) 54 Cal.4th 331, 334 (*Correa*).) In *Correa,* the defendant was found hiding with a cache of guns. He was sentenced on seven separate counts of being a felon in possession of a firearm even though he was found with the weapons at the same time. The court held the sentence did not violate section 654. (*Id.* at p. 335.)

While Montgomery may have harbored only one intent and objective when he sent those letters to Concepcion, that does not mean that section 654 and *Neal* require the sentences to counts 6 through 8 be stayed. As in *Correa,* each of these sentences constitutes a violation of the same criminal statute.

Moreover, the conduct on which these counts are based are letters written on different days. "It seems clear that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" (*People v. Beamon, supra,* 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken."

5

(*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; *In re William S.* (1989) 208 Cal.App.3d 313, 317; *People v. Louie* (2012) 203 Cal.App.4th 388, 398.)

In *People v. Kwok* (1998) 63 Cal.App.4th 1236, for example, the defendant entered the victim's house, knowing she was away, removed the lock from her door, and had a key made with the intent of assaulting her in her home at a later date. He subsequently used the key to enter her house and assault her. (*Id.* at pp. 1244-1245.) The defendant was convicted of one count of assault and two counts of burglary. The sentence on the second burglary, committed at the same time as the assault, was stayed under section 654. (*Id.* at p. 1241.) Relying on *Neal,* the defendant argued that his prior entry into the victim's home to remove the lock was also part of an indivisible course of conduct such that sentencing on that burglary conviction must be stayed as well. (*Id.* at p. 1253.)

The court rejected his argument and held, "a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok, supra,* at p. 1253.) Courts have similarly refused to apply section 654 where several crimes were committed as part of a general scheme, but were committed at different times. (*See, e.g., People v. Andra* (2007) 156 Cal.App.4th 638, 640-642 [defendant's commission of identity theft to facilitate a vehicle theft and to obtain money by false pretenses did not implicate section 654, because the crimes occurred three weeks apart]; *People v. Williams* (1988) 201 Cal.App.3d 439, 442 [burglary to obtain jewels to facilitate solicitation of murder months later was part of the same scheme but not subject to section 654].)

These authorities make it clear that section 654 does not apply to the sentences imposed on count 7, based on a letter dated August 7, 2012, and count 8, based on a letter dated August 12, 2012. Each of the counts is predicated on a different letter written and received on separate occasions. As to counts 6 and 9, which are both based on an August 5, 2012 letter, section 654 does apply to stay the sentence on one of those convictions.

6

In the August 5, 2012 letter, Montgomery wrote, "the detectives came up here and told me they spoke to you and you told them you will be at court but I think they are not being truthful. You told my dad and me you would not do that and I'm trusting you. I do not deserve to do life in prison because you got upset. I don't have no charges against me but the one you told the police. If I go to jail, it's on. I did not say that Connie, I said if I go to jail, it's going to be ugly . . . Please do not come to court. Pleas[e] tell them you were upset and you misheard me. I did not threaten you. Please Connie call my [probation officer] and . . . explain to her that nothing happened."

The comments made in this letter could equally support a conviction for attempting to dissuade Concepcion from testifying at trial (count 6) or attempting to dissuade her from assisting in Montgomery's prosecution (count 9). Thus, the application of section 654 is proper. Indeed, the People conceded that counts 6 and 9 would "merge for sentencing purposes. Therefore, the court should sentence the defendant on Counts 5, 6, 7, 8 and stay execution of sentence as to Count 9." Because we are remanding the case to the trial court for another problem, we will leave it up to the court to determine which count should be stayed.

## II.     Protective Order

Montgomery next challenges the 10-year criminal protective order issued by the trial court in conjunction with his sentence. The order restrained Montgomery from having any contact with Concepcion, except through an attorney of record, and from coming within 100 yards of her. Montgomery argues it must be stricken because it is unauthorized by any statute and violates his due process rights. The Attorney General counters that Montgomery has waived the claim by failing to object at the sentencing hearing and that the protective order is authorized pursuant to section 136.2, subdivision (i). We agree with the Attorney General, but only on the latter point.

We first address the Attorney General's waiver argument as that may forestall any other arguments. The right to challenge a criminal sentence on appeal is not unrestricted. In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have required parties to raise certain

issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235; *People v. Walker* (1991) 54 Cal.3d 1013, 1023, overruled on separate grounds by *People v. Villalobos* (2012) 54 Cal.4th 177, 183.)

"But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction. [Citation.]" (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381 (*Ponce*).) "A claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court. [Citations.]" (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.) "Although the cases are varied, a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing. [Citation.]" (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "Because this case involves the jurisdictional validity of the trial court's decision to issue [a] . . . protective order during sentencing, we will consider [appellant's] claim on the merits." (*Ponce, supra,* 173 Cal.App.4th at pp. 381-382; *People v. Robertson* (2012) 208 Cal.App.4th 965, 995-996.)

The protective order was made pursuant to Judicial Council form, CR-160 (rev. Jan. 2009), which cites to sections 136.2, 166, 1203.097(a)(2), 273.5(i), and 646.9(k) in its title. The trial court specifically marked the boxes indicating the order was issued under sections 273.5(i) and 646.9(k), but did not mark the box identifying section 136.2 as a basis for the order. Nevertheless, "[i]t is not the content or format of the Judicial Council form that determines the propriety of the challenged protective order, but the authorizing statute." (*People v. Stone* (2004) 123 Cal.App.4th 153, 158.) We find that section 136.2, presented in the protective order, supplied the requisite authority.

8

Section 136.2,[3] subdivision (i)(1) *requires* a trial court to consider issuing a restraining order for up to 10 years "[i]n all cases in which a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700 . . ." Under section 13700, "'[d]omestic violence' means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." (§ 13700, subd. (b).) "'Abuse' means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (§ 13700, subd. (a).)

Montgomery was convicted of dissuading a victim from appearing or testifying at court under section 136.1. We turn to whether this was a crime of domestic violence under section 13700. In issuing the protective order, the trial court found that Montgomery's convictions were for crimes of domestic violence as defined by section 13700. We find substantial evidence supports the trial court's finding. (*See People v. Rucker* (2005) 126 Cal.App.4th 1107, 1117.)

It is not contested that Montgomery and Concepcion had a prior dating relationship. As for the second requirement, the question is whether Montgomery placed Concepcion "in reasonable apprehension of imminent serious bodily injury . . ." The contents of the letters, when considered with the other evidence presented at trial, leaves little doubt but that Concepcion would be in such a state of fear. On the day he was arrested for violating the restraining order, Montgomery told Concepcion "if I go to jail, it's going to be on[]" and [it's] going to get ugly." In his letters, Montgomery reminded

---

**3** Until recently, section 136.2 strictly limited the duration of a criminal protective order to the pendency of the criminal proceedings. (*Ponce, supra,* 173 Cal.App.4th at p. 383; see also *People v. Selga* (2008) 162 Cal.App.4th 113, 118.) In 2011, the Legislature amended section 136.2 to add subdivision (i), which permits a trial court to lengthen the duration of the order past the time of the criminal proceedings only in cases involving crimes of domestic violence. (Stats. 2011, ch. 155, § 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 723 (2011-2012 Reg. Sess.) as amended May 2, 2011, p. 4.)

Concepcion, "I said it's going to be ugly . . ." He dismissed his harassment of her, stating, "Now the violating of the restraining order is nothing." Montgomery's letters also demonstrated his continued obsession with Concepcion. He referred to her as his "world" and he told her that "nobody can tear apart what we had but you." When she refused to take his calls, he told her he was "hurting" and wondered how she could ignore him after all he had done for her.

Such statements were reasonably construed by the trial court to have put Concepcion in fear of imminent serious bodily injury, particularly when placed in the context of his prior behavior. Concepcion told police that Montgomery's prior behavior "really scared" her. Montgomery violated the previously imposed protective order on numerous occasions by harassing her with repeated phone calls and unwelcomed visits to her home. The trial court's decision to impose a protective order was supported by substantial evidence.

## III.    *Romero* Motion

At sentencing, the trial court struck a prior strike conviction pursuant to a *Romero* motion. While the trial court articulated its reasons for doing so from the bench, those reasons are not reflected in the minute order or in any other writing, as required by section 1385.[4] In fact, the minute order erroneously shows the *Romero* motion was denied. The Attorney General submits the matter must be remanded for the trial court to set forth in writing its reasons for striking the prior conviction as required by section 1385. Montgomery concedes the issue. We agree the matter should be remanded to the trial for the limited purpose of reiterating its oral reasons in a written minute order. (*People v. Bonnetta* (2009) 46 Cal.4th 143, 153.)

---

[4]    Section 1385, subdivision (a), states, "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

10

## DISPOSITION

The matter is remanded to the trial court to stay the sentence imposed on either count 6 or 9 pursuant to section 654 and to set forth in writing its reasons for striking the prior conviction as required by section 1385.  The judgment is affirmed in all other respects.


                                        BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.

11