Filed 1/14/16  P. v. Audette CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JILL AUDETTE,<br><br>    Defendant and Appellant. | D067865<br><br><br><br>(Super. Ct. No. SCD257975) |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jill Audette of presenting a false motor vehicle insurance claim (Pen. Code,[1] § 550, subd. (a)(4), count 1); making a false statement regarding an

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

insurance claim (§ 550, subd. (b)(2), count 2); presenting false information regarding an insurance claim (§ 550, subd. (b)(1), count 3); hit and run driving (Veh. Code, § 20002, count 5); and making a false report of a vehicle theft (Veh. Code, § 10501, subd. (a), count 6).

Audette was sentenced to two years in custody and three years in mandatory supervision. The court did not impose sentence for the misdemeanor counts 5 and 6.

Audette appeals challenging only her sentence. She contends that counts 1 through 3, which were committed on different days, were all part of an overarching scheme to defraud the insurance company and therefore counts 2 and 3 should be stayed under section 654. We find Audette's contention is inconsistent with case law. The crimes were committed on different days, such that Audette had time to reflect before committing new offenses. While the several crimes may have been part of a greater scheme, because they were separated in time, section 654 does not require that the sentences for those offenses be stayed. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289 (*Kurtenbach*).)[2]

### STATEMENT OF FACTS

The facts of the current offenses are not in dispute. Audette does not challenge the admissibility or the sufficiency of the evidence to support her convictions. Further, the facts are only marginally relevant to the issues on appeal. Therefore to conserve resources we will adopt the respondent's brief summary of the facts.

---

[2]    Audette also contends that any error in the application of section 654 involves a violation of federal due process. We need not address this assertion since we will find no error in this case.

Prosecution Case

September 2, 2013 (count 5)

During the early morning hours of September 2, 2013, at around 3:00 a.m., Hillside Garden Apartment security guard Jorge Argil heard a loud crash. Argil immediately noticed a silver Hyundai, with a damaged front end, speeding down University Avenue. As the Hyundai passed Argil, he made eye contact with appellant, who was driving the vehicle. Appellant then parked, jumped out her vehicle and fled on foot. Argil attempted to follow appellant but lost sight of her. Argil then called the police and reported what he had seen.

At approximately 3:15 a.m. the same morning, San Diego Police Officer Cecelia Duncan responded to the Hillside Garden Apartment complex. Officer Duncan verified that an accident had occurred and that appellant's vehicle had been involved in the collision. Appellant's vehicle had struck a 2003 Ford Focus belonging to Aracely Cisneros with such force that the Focus had struck the vehicle in front of it, a 2004 Ford Ranger, which was also damaged as a result.

September 2, 2013 (count 1)

Later in the day, on September 2, 2013, appellant called Progressive Insurance and reported, "The police believe my car was stolen and it was involved in a hit and run, and I need a rental car." At the time of the accident, appellant's 2013 Hyundai was insured with comprehensive coverage through Progressive Insurance.

3

### September 3, 2013 (count 2)

On September 3, 2013, Progressive Insurance investigator Scott Kwieran conducted a phone interview with appellant. Appellant explained that she had gone clubbing with friends on the evening of September 1, 2013, and that her keys had disappeared. She claimed she had not noticed her keys were gone until the following morning when she discovered her vehicle was missing.

### September 17, 2013 (count 3)

On September 17, 2013, two weeks after her interview with Investigator Kwieran, appellant faxed a sworn "affidavit of vehicle theft" to Progressive Insurance containing details related to the incident.

### September 20, 2013 (count 6)

On September 20, 2013, San Diego Police Sergeant Victoria Houseman interviewed appellant. Appellant told Sergeant Houseman that she had gone out drinking with her friends on September 1, 2013, only to find her keys and car missing the following morning. Appellant claimed she had called the police and her insurance company upon discovering her vehicle had been stolen.

### Resolution and Damages

In total, Progressive Insurance paid out approximately $25,000 because of appellant's accident and fraudulent claim.

### Defense Case

The defense called no witnesses but introduced into evidence two exhibits related to cell phone records.

4

DISCUSSION

A.  Background

The probation report noted, and the court agreed that the crimes in this case were part of a "continuous scheme to maintain her fraudulent report of her hit and run, she had ample opportunity to reflect on her actions and provide the truth.  However, she continued to provide false statements to different parties, thus showing each count as independent from one another and PC654 does not apply."

Having found section 654 inapplicable, the trial court, without objection from the defense, imposed consecutive sentences for counts 1 through 3.

B.  Legal Principles

Whether a course of criminal conduct is divisible, thus giving rise to more than one act, depends on the intent and objective of the actor.  (*People v. Perez* (1979) 23 Cal.3d 545, 550-551; *People v. Britt* (2004) 32 Cal.4th 944, 951-952.)  Where the acts are independent of each other they may be punished separately even though they were otherwise part of an indivisible course of common conduct.  (*People v. Harrison* (1989) 48 Cal.3d 331, 335.)

Where the various criminal acts take place over a period of time, and are separated by sufficient time that shows the actor had time to reflect, the individual acts may be punished separately.  Section 654 does not bar multiple punishments for several crimes committed at different times, even though they may arise from a common scheme. (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11*; People v. Gaio* (2000) 81 Cal.App.4th 919, 935; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1256.)

5

In *Kurtenbach, supra*, 204 Cal.App.4th at page 1289, this court held that crimes committed on separate days, even if part of some overarching scheme, can be punished separately. (See also *People v. Williams* (1988) 201 Cal.App.3d 439, 442.)

Audette relies on *People v. Casica* (2014) 223 Cal.App.4th 320, 324 (*Casica*), for the proposition that multiple forgeries, and bank entries to cash the forged instruments were part of the same scheme and thus subject to section 654. However, *Casica* is distinguishable from this case.

The defendant in *Casica, supra,* 223 Cal.App.4th 320, was convicted of six counts involving three efforts to pass forged instruments. On each of three days the defendant forged an instrument and then entered a bank. The court held that as to each bank entry to pass a forged check, section 654 would allow only one punishment. However, the court did permit three separate punishments for each of the three days involving criminal transactions.

We review the trial court's determination that the various crimes are different acts under the substantial evidence standard of review. (*People v. Racy* (2007) 148 Cal.App.4th 1237, 1336-1337.)

## C. Analysis

The record establishes that counts 1 through 3 were committed on different dates involving false statements to three different people. Undoubtedly the crimes were all part of Audette's scheme to cover up her hit and run and to get the insurance carrier to pay for the losses. The false statements were also necessary to cover the original lies with more lies to keep the claim going and not be detected. However, as we have discussed, these

6

crimes were all separated by time.  Case law has emphasized that the passage of time and the opportunity to reflect takes these offenses out of the multiple punishment limitations of section 654.  (*Kurtenbach, supra*, 204 Cal.App.4th at p. 1289; *People v. Petronella* (2013) 218 Cal.App.4th 945, 964.)

We are satisfied that although Audette had an overarching purpose to defraud the insurance carrier and lie to police to avoid detection, her criminal acts, separated in time from each other, deserve separate punishment.  The trial court properly imposed consecutive sentences.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

7